540 P.2d 700

**The STATE of Arizona, Appellee,**

**v.**

**Willie Lee RICHMOND, Appellant.**

**No. 3065.**

Supreme Court of Arizona,
In Banc.

Oct. 1, 1975.
Rehearing Denied Oct. 28, 1975.

---

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Défender by Karen Zizmor, Asst. Public Defender, Tucson, for appellant.

CAMERON, Chief Justice.

This is an appeal by the defendant Willie Lee Richmond from a jury verdict and judgment of guilt to the crime of murder in the first degree, A.R.S. §§ 13–451, –452, and –453, and a sentence thereon of life imprisonment; and a verdict and judgment of guilt to the crime of burglary, second degree, A.R.S. § 13–302, and a sentence thereon of four to five years in the Arizona State Prison, both to run concurrently with the sentences imposed in defendant's prior conviction.

We are called upon to determine:

1. Did the trial court's denial of defendant's motions for a change of venue, regulation of the media, and sequestration of the jury deny defendant a fair trial?

2. Did certain evidence admitted by the trial court have sufficient foundation to link it to defendant?

3. Was the instruction to the jury on the issue of premeditation proper?

4. Was the form of the verdict given to the jury proper?

5. Could defendant have been found guilty of first degree murder under the felony murder rule?

The facts essential for a determination of this matter on appeal are as follows. On 7 July 1973 the son of Mrs. Mary S. Dawson found his mother dead from gunshot wounds in their home in Tucson. The residence had also been ransacked and various items belonging to the family were missing. On 6 September 1973 defendant was indicted for the crimes of murder and burglary by the grand jury of Pima County. He had already been tried twice for first degree murder in unrelated incidents, once convicted and sentenced to death, and once acquitted. The communications media gave defendant's matter customary coverage for a crime of this nature and one with defendant's background. Defendant's trial in this case commenced 23 July 1974 in the Superior Court of Pima County with the result previously noted from which he appeals.

## FAIR TRIAL

Defendant urges that it was fundamental error to deny his motions for a change of venue, his motion to regulate the news media, and his motion to sequester the jury. The newspaper articles in support of the motions indicated that the defendant had been sentenced to death at a previous trial on a different matter and had been acquitted on another murder charge. We have said:

"While a change of venue should be granted when it is apparent that the defendant cannot have a fair trial in the county in which he is to be tried, this is a matter primarily within the sound discretion of the trial court." State v. Ruffin, 110 Ariz. 364, 366, 519 P.2d 63, 65 (1974).

And:

"The trial judge is granted this discretion because he is the only unbiased party to an action who is in a position to observe the entire proceeding with an unjaundiced eye. He can observe the

prospective jurors and witnesses, their testimony, demeanor and behavior, as well as the attitudes and crosscurrents of the community in determining whether any actual or supposed prejudice exists —such as would necessitate a change of venue * * *." State v. Schmid, 107 Ariz. 191, 193, 484 P.2d 187, 189 (1971).

▪ When, as here, the reason for the motion for a change of venue is pretrial publicity, Rule 10.3(b), Rules of Criminal Procedure 1973, requires a showing that the publicity will probably result in the denial of a fair trial. We have read the newspaper stories regarding defendant and they are neither sensational nor inflammatory but rather are factual and restrained. Defendant was not subject to sensational or inflammatory coverage by the news media. We do not believe from the record in this case that the pretrial publicity was prejudicial. A juror does not have to be completely ignorant of the facts of a particular case before he can sit as a juror. *State v. Schmid,* supra.

The United States Supreme Court has stated:

"The constitutional standard of fairness requires that a defendant have 'a panel of impartial, "indifferent" jurors.' (citation omitted) Qualified jurors need not, however, be totally ignorant of the facts and issues involved.

'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court' (citation omitted)" *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). See also *State v. Holmes,* 110 Ariz. 494, 520 P.2d 1118 (1974).

▪ The trial judge was not in error in denying the change of venue. Neither do we find that the publicity was such as to require sequestration of the jury. The jury was cautioned by the trial court not to read the newspapers or listen to the radio or watch television during the trial and there is no indication that the court instructions were violated.

▪ We have read the record in this case, especially the voir dire of the jury members, and conclude that there was no abuse of discretion in the trial court's denying the motions for change of venue, regulation of the media (if indeed that could be done), or the sequestering of the jury. We find no error.

## ADMISSION OF EVIDENCE

▪ Defendant next urges that a wallet and personal papers bearing defendant's name, found in a large box containing a clock and a vacuum cleaner, both taken from decedent's home, should not have been admitted, over defendant's objection, as evidence on the grounds that there was insufficient foundation laid to connect the items to defendant. A detective sergeant testified to the effect that he had conducted a surveillance of defendant on 18 August 1973, at his then residence, that defendant left in his car which contained at least one large box and other boxes evidently containing clothing and personal effects, that the vehicle and contents traveled to the home of defendant's sister, and that the car was there parked with the doors open as if the car were being unloaded. The officer further testified that on 31 August 1973 a search warrant was executed on the residence of defendant's sister, and the boxes, which contained the stolen property together with defendant's wallet and personal papers, were seized.

The evidence was found in defendant's possessions stored at his sister's house. It was relevant. It had probative value. We find that the trial court properly admitted the wallet and papers into evidence together with the stolen property. We find no abuse of discretion.

## PREMEDITATION INSTRUCTION

Defendant next urges that the trial court's instruction to the jury relating to the matter of premeditation was given without proper explanation as to what is premeditation and was error. We disagree. The court instructed as to malice and then stated:

"* * * First degree murder is murder which is the result of premeditation. 'Premeditation' means 'decided in the mind beforehand.' It does not matter how quickly or how slowly the decision to kill is followed by the act of killing."

We find these instructions adequate. *State v. Duke,* 110 Ariz. 320, 518 P.2d 570 (1974); *State v. McGee,* 91 Ariz. 101, 370 P.2d 261 (1962), cert. den. 371 U.S. 844, 83 S.Ct. 75, 9 L.Ed.2d 79; *State v. Eisenstein,* 72 Ariz. 320, 235 P.2d 1011 (1951). Even if the instructions were not adequate, under the facts in this case there would be no error. We have stated:

"The main question for us to determine at this time is whether or not the instruction given on 'premeditation' and 'deliberation' could have in any way prejudiced this defendant. This was a case of murder in the commission of a robbery. The evidence showed that the camera, wallet and car in the defendant's possession when he was captured were the property of deceased. Every element of the crime went to show that robbery was the purpose of the commission of this offense. Under the circumstances the jury did not need to consider the element of deliberation and premeditation in arriving at a verdict, as given, of murder of the first degree. * * *" *State v. Serna,* 69 Ariz. 181, 187–88, 211 P.2d 455, 459 (1949).

## FORM OF THE VERDICT

Defendant asserts that the failure of the trial judge to give "specific forms of verdict" denied him fundamental fairness since he "[was] entitled to know upon what basis he was found guilty." Defendant contends that the forms of verdict did not distinguish between premeditated murder and the two theories of felony murder which the State had argued to the jury.

The State had argued that the jury could find defendant guilty of premeditated murder; of felony murder based upon the first entry into decedent's house; or of felony-murder based upon the second entry into the home. The jurors were given two forms of verdicts concerning the homicide which read:

"We the jury * * * do find the defendant ———— of the crime of murder, first degree.

"We the jury * * * do find the defendant ———— of the crime of murder, second degree."

While we have said:

"The trial court should instruct the jury on every degree or grade of the offense which is supported by the evidence, * * *," *State v. Clayton,* 109 Ariz. 587, 595, 514 P.2d 720, 728 (1973) (see also *State v. Miniefield,* 110 Ariz. 599, 522 P.2d 25 (1974).

we do not believe the trial court is required to give separate forms of verdict for each theory of first degree murder that the evidence supports. Indeed, giving the jury in this case three separate forms of verdict for first degree murder (even if they could be properly drafted) might be unduly confusing if not prejudicial to the defendant. Our statute, A.R.S. § 13–452, combines all first degree murder verdicts in one paragraph. Once the jury is properly instructed, as they were here, as to what is necessary to arrive at a verdict of first degree murder, there need be only one form of the verdict for first degree murder even though there may be more than one basis upon which the jury could arrive at that verdict. We find no error.

## FELONY MURDER

Defendant finally urges that he could not have been convicted of felony murder

because at the time of the homicide he had completed the burglary, left the house and returned to it.

On the matter of whether or not defendant had left the house after the burglary the evidence is not entirely clear. Freddie Logan, a partner in the burglary, testified:

> " * * * at this time I said to Willie, 'Let's go,' and we started out the door, and as we got to the front door, Willie stopped and I stopped, and he turned and he went back and then he went back again to the room to the left which the lady was at."

Much has been written on the subject of the "felony murder rule" and the necessary link between the murder and the commission of the original felony. Whether it be expressed in terms of "one continuous transaction," *Bizup v. People,* 150 Colo. 214, 371 P.2d 786, 788 (1962) or "a break in the chain of events," *Payne v. State of Nevada,* 81 Nev. 503, 406 P.2d 922, 924 (1965), the courts reach a uniform conclusion, and when the felony is so entwined with the murder that it is part of that murder we will not hold a stopwatch on the events or artifically break down the actions of the defendant into separate components in order to avoid the clear intent of the legislature in enacting the felony-murder rule. It has been correctly stated:

> "There is no requirement that the killing occur, 'while committing' or 'while engaged in' the felony, or that the killing be 'a part of' the felony, other than that the few acts be a part of one continuous transaction. (citation omitted). Thus the homicide need not have been committed 'to perpetrate' the felony. There need be no technical inquiry as to whether there has been a completion or abandonment of or desistence from the robbery before the homicide itself was completed." *People of the State of California v. Stamp,* 2 Cal.App.3d 203, 82 Cal. Rptr. 598, 602–603 (1969), cert. den. 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46.

In the instant case the felony and the murder were part of the same series of events and there was a sufficient link between the burglary and the murder here to uphold a felony-murder conviction.

Affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.