553 P.2d 1192
**STATE of Arizona, Appellee,**
v.
**Mack Gay CHILDS, Appellant.**
No. 3132.

Supreme Court of Arizona,
In Banc.
Aug. 6, 1976.

Bruce E. Babbitt, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender, Jeffrey D. Bartolino, Asst. Public Defender, Tucson, for appellant.

GORDON, Justice:

Appellant, Mack Gay Childs, was found guilty by a jury of first degree murder, sentenced to life imprisonment and appeals from the judgment of conviction and the order denying a new trial. We take jurisdiction pursuant to Arizona Constitution, Art. 2 § 24 and Art. 6 § 5 and A.R.S. § 13–1711.

Appellant sets forth seven assignments of error which we have reduced to the following: first, the evidence was insufficient to justify the verdict of first degree murder, second, the jury was misdirected as to the law; third, the prosecutor's closing remarks were so prejudicial as to constitute reversible error; and fourth, the court erred in denying appellant's motion for a new trial based upon jury misconduct. We find no reversible error and affirm the judgment and sentence.

Appellant first urges that the evidence was insufficient as a matter of law to justify the verdict of first degree murder. The appellate court in reviewing the sufficiency of the evidence is "only concerned with whether there is substantial evidence in support of the verdict. * * * Reversible error occurs when there is a complete absence of probative facts to support the conclusion." *State v. Miller*, 16 Ariz.App. 96, 491 P.2d 485 (1971). Further, the evidence will be considered in the light most favorable to the State and all reasonable inferences will be resolved against the defendant. *State v. Verdugo*, 109 Ariz. 391, 510 P.2d 37 (1973). The facts of this case present substantial evidence from which a jury could reasonably find the required elements of malice, premeditation and deliberation in order to support its finding of first degree murder.

The homicide occurred on August 5, 1974, at approximately one o'clock in the morning in the trailer in which the appellant, the decedent, Merle Slayton who was his common-law wife, and her ten year old daughter, Brenda Slayton, lived.

The evidence showed that during the day of August 4, 1974 appellant, decedent and Brenda had gone to Sahuarita to look at a trailer home for Merle's mother. Appellant and decedent quarrelled over whether the purchase price was reasonable. Around seven in the evening they took Brenda to the roller skating rink and apparently had ceased quarrelling. During the day and on into the night the couple consumed great quantities of beer. Brenda testified that the couple was no longer quarrelling when they picked her up at the roller skating rink and that she went to bed around eleven.

The appellant at trial testified he loaded his rifle that night as he routinely did every night, and that when he followed Merle into the bedroom the bolt slipped as he was lowering it, and the rifle discharged accidentally. This testimony was in conflict with earlier stories told to an arresting law enforcement officer and to a neighbor.

After the shooting appellant went to the trailer of Mr. and Mrs. Williams and requested that they telephone the police because he had shot and killed Merle. Mrs. Williams testified that the appellant stated to her that Merle was "riding" him and he did not know why he killed her. When the appellant and Mr. Williams went to the trailer to take Brenda Slayton over to the Williams' trailer Mr. Williams found the decedent's body on the floor completely covered with a blanket. In response to Mr. Williams' question the appellant stated that the killing was an accident. He then ejected an unexpended cartridge from the rifle and handed it to Mr. Williams. This cartridge had a partial firing pin impression on it.

There was evidence that the decedent might have bent down in an attempt to protect herself and expert testimony that she lived and was conscious for fifteen to thirty minutes after she was shot. There was additional expert testimony that the partial firing pin impression probably was caused by an attempt to fire the rifle a

second time. Brenda Slayton also testified to a prior shooting incident. Approximately two and a half months earlier, as Merle was holding Brenda on her lap, appellant shot in her general direction.

Though much of the testimony was disputed, more than sufficient evidence existed to sustain the jury's verdict. On appeal this court will not substitute its judgment for that of the jury. *Moore v. State,* 65 Ariz. 70, 174 P.2d 282 (1946); *State v. Tuttle,* 58 Ariz. 116, 118 P.2d 88 (1941).

Appellant next urges that an instruction given by the court constituted fundamental reversible error. The instruction was the Recommended Arizona Jury Instruction Crimes #4 and was given as follows:

"Murder is the unlawful killing of a human being with malice.

"The thing that distinguishes murder from all other killings, is malice. There are two kinds of malice. A person has one kind of malice when he deliberately intends to kill. If you determine that the defendant used a deadly weapon in the killing, you may find malice. If you determine that the defendant has no considerable provocation for that killing, you may find malice.

"There is also a second kind of malice. A person has this kind of malice if he shows a reckless disregard for human life.

"Once you have determined that there is malice, you must determine whether murder was in the first or second degree. First degree murder is murder which is the result of premeditation. 'Premeditation' means 'decided in the mind beforehand.' It does not matter how quickly or slowly the decision to kill is followed by the act of killing."

Appellant contends that since the instruction contains a definition of express malice (intentional killing) and a definition of implied malice (reckless disregard for human life) the jury could use implied malice to find first degree murder. We do not agree.

"Both express and implied malice will support a conviction of murder." *State v. Magby,* (No. 3112, filed July 20, 1976). The fact that the jury finds that the element of malice exists means only that the jury has made a determination that the unlawful killing amounts to murder. If the jury only finds that the killing was with malice, either express or implied, and nothing more, then the correct determination would be second degree murder. However, it is the finding that the murder, classified by the means used (poison, lying in wait, torture), or by the fact that the killing was done in the perpetration or attempt to perpetrate certain felonies, or by the fact that the evidence shows that the killing was the result of a willful, deliberate and premeditated act that justifies the determination that the murder was of first degree. This instruction adequately distinguishes between first and second degree murder.

Appellant contends that the court erred in defining implied malice as a reckless disregard for human life because this definition is equivalent to an instruction that gross negligence equals malice. This court has held that this is a proper instruction. *State v. Kelly,* 112 Ariz. 468, 543 P.2d 780 (1975).

Appellant urges that it was error to instruct on the presumption of malice when a deadly weapon is used without stating that this presumption arises only if the jury finds no circumstances of mitigation, justification or excuse. While it would have been better if the instruction had included language to the effect that the jury should find no circumstance of justification, mitigation or excuse before they could find an inference of malice from the use of a gun or other deadly weapon, we do not find reversible error for the failure of the trial court to have so instructed. We have held that "use of a deadly weapon such as a gun, standing alone, is sufficient evidence from which the jury may

find malice." *State v. Duke,* 110 Ariz. 320, 518 P.2d 570 (1974). The R.A.J.I. correctly states the elements of murder as the unlawful killing of a human being with malice. An unlawful killing, by implication, could not be a justifiable or excusable killing. Further, when the jury agreed upon a verdict of first degree murder they first had to find malice and then, under the facts of this case, had to find that the appellant's decision to kill was "decided in the mind beforehand." These elements clearly preclude an accidental killing which does not involve a decision to kill.

Appellant next contends that the instruction on first and second degree murder is erroneous in that it neither mentions nor defines "wilful" and "deliberate" since both "wilful" and "deliberate" are included in the statutory definition of murder in the first degree. (A.R.S. § 13–452). We do not agree with this contention.

 We hold that the elements of wilfulness and deliberation are implied in the element of premeditation. " 'Deliberation' connotes an intentional killing." *State v. Schroeder,* 95 Ariz. 255, 389 P.2d 255 (1964). This instruction addresses itself to a decision to kill that is made prior to the act of killing. The formation of such a decision is the element of deliberation required for a finding of first degree murder. Moreover this instruction does not place undue emphasis upon the rapidity with which premeditation could occur, only that the premeditation need not be prolonged. This is in accord with previous holdings of this court. *State v. Moore,* 112 Ariz. 271, 540 P.2d 1252 (1975). This instruction adequately states the law. *State v. Richmond,* 112 Ariz. 228, 540 P.2d 700 (1975).

The instruction given to define and distinguish first and second degree murder adequately states the law as to a consideration of the evidence presented in the instant case, and thereby is not violative of due process. We do agree with appellant that an instruction that includes all the statutory elements of first degree murder

would be preferable to the instruction actually given. However, since we find that the jury would not be misled by the instruction given there was no abuse of the trial court's discretion in giving this instruction regarding first and second degree murder.

 Appellant contends that the R.A.J.I. on good character is not the law in Arizona, and the court's refusal to give appellant's requested instruction in its place was reversible error. We do not agree. "The accused, when presenting his case, may offer evidence of his good character as substantive evidence from which the jury may infer that he did not commit the crime charged." Arizona Law of Evidence, Udall, § 114 (1960). An instruction on good character must inform the jury that good character testimony in connection with all the other evidence may generate a reasonable doubt. *Apodaca v. State,* 21 Ariz. 273, 187 P. 581 (1920). R.A.J.I. C.S. 11 states inter alia:

> "Consider the evidence of good reputation together with all the other evidence. If you are convinced beyond a reasonable doubt that the defendant is guilty of the crime charged, you must not use the evidence of good reputation as an excuse to acquit the defendant."

We believe this instruction correctly states the law, and places character evidence in the perspective it should be—that of evidence which is entitled to no more or no less weight than any other item of evidence in the case. The instruction clearly tells the jury in the first sentence, in substance, that it is to consider the evidence of good character along with all the other evidence in the case. Then in the second sentence it tells the jury that if after having so weighed and evaluated all the evidence in the case including the evidence of good character, they are convinced beyond a reasonable doubt that the defendant is guilty of the crime charged they should not then use the evidence of good character a second time as an avenue of escape to find the defendant not guilty.

■ Appellant further urges that the court's failure to give a requested instruction based upon the statutory defense of excusable homicide must be considered reversible error. We do agree with appellant that the requested instruction, based upon A.R.S. § 13–460(1) went to the gist of his theory of defense and was supported by competent evidence so that it was error not to give it. *State v. Randolph,* 99 Ariz. 253, 408 P.2d 397 (1965). However, the error was not so prejudicial as to require reversal. See Arizona Const. Art. 6 § 27.

Here where the defense is accident the question of whether the appellant lacked the necessary intent to kill unlawfully was covered by R.A.J.I.C.S.–4–Intent instruction [1] and by the instructions given in regards to the four degrees of homicide and the reasonable doubt standard applied to each. When the instructions are read as a whole and not piecemeal they adequately state the law. *State v. Richardson,* 110 Ariz. 48, 514 P.2d 1236 (1973).

■ Appellant contends that the prosecutor's closing remarks were so highly improper as to constitute reversible error. In their arguments to the jury attorneys are allowed wide latitude in discussing the evidence and the inferences that can legitimately be drawn therefrom. *State v. Adams,* 1 Ariz.App. 153, 400 P.2d 360 (1965). However, arguments before the jury as to evidence which has been excluded by the court, withdrawn after an objection, or as to matters which are simply not in evidence may constitute reversible error if sufficiently prejudicial. *State v. Hunt,* 8 Ariz.App. 514, 447 P.2d 896 (1969). The remark objected to and sustained by the court was in reference to the possibility of other prior shooting incidents that were not in evidence.

By Mr. Lingeman

"I don't think we would have ever heard that if it hadn't been for Brenda. But you make up your own mind about that. And I don't know how many other instances there may have been that we will never hear about."

This statement was improper, and the objection by defense counsel was correctly sustained by the trial court with an admonishment to the jury to disregard the statement. However, we do not feel that the remark was sufficiently prejudicial to warrant reversal. *State v. Hunt,* supra.

■ The language used by the prosecutor in alluding to the fact that the appellant had never previously made statements consistent with his courtroom testimony was not an improper remark in light of the evidence presented. The appellant had given prior inconsistent versions of the sequence of events at the time of the killing, and these statements were properly in evidence. The statement objected to was sustained by the court, and the jury was admonished to disregard the statement. The remaining comments by the prosecutor regarding the respective duties of the prosecutor and the defense counsel were in error. It has been held that both the prosecutor and the defense counsel are officers of the court. *State v. Zumwalt,* 7 Ariz. App. 348, 439 P.2d 511 (1968). The remarks made by the prosecutor in *Zumwalt* were of a more serious nature than those made in the present case and were held not to be prejudicial.

■ We do not approve of some of the remarks made by the prosecutor in his closing argument. However, under the facts of this case we do not feel that there exists a reasonable probability that the verdict would have been different had the remarks not been made, and so do not find prejudicial error. *State v. Ybarra,* 97 Ariz. 200, 398 P.2d 905 (1965); *State v. Zumwalt,* supra.

■ Appellant's final contention is that the trial court should have considered

1. "The state must prove that the defendant had done an act which is forbidden by law and that he intended to do it. You may determine that the defendant intended to do the act if he did it voluntarily. The state does not have to prove that the defendant knew the act was forbidden by law."

impeachment of the jury verdict based upon one juror's affidavit and testimony that she was pressured into her verdict. The general rule is that a jury verdict cannot be impeached by the affidavit of a juror who has agreed to the verdict in open court. *State v. Melcher,* 15 Ariz.App. 157, 487 P.2d 3 (1971). There is nothing in the record to indicate that any juror or jurors had been guilty of misconduct so as to make applicable Rule 24.1, Arizona Rules of Criminal Procedure.

Judgment affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.