574 P.2d 1290

**STATE of Arizona, Appellee,**

v.

**Marty Rae PITTMAN, Appellant.**

**No. 3834.**

Supreme Court of Arizona, In Banc.

Jan. 20, 1978.

Rehearing Denied Feb. 22, 1978.

Bruce E. Babbitt, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

William Lee Eaton, Prescott, O. Earl Reed, Taft, Cal., for appellant.

GORDON, Justice:

On March 4, 1977, a Yavapai County Jury found appellant guilty of the first degree murder of Clara Statler. Appellant was sentenced to life imprisonment without possibility of parole for twenty-five years. We have jurisdiction of his appeal pursuant to A.R.S. § 13–1711.

At the time of the events described below, appellant, age 17, lived with his parents in a house directly across the street from the houses of Sam Barney, age nine, and Jesse Rivera, Jr., age eight, two of the state's key witnesses. The victim lived across the alley that runs behind the Rivera and Barney houses. Both witnesses testified that they knew the appellant through their associations with him as a neighbor.

Jesse Rivera testified that on October 28, 1976, he observed the appellant walk down the alley described above. He saw the appellant approach the victim's house and knock on her door. The victim opened the door, saw the appellant and tried to shut the door. Appellant prevented the door from closing, however, by putting his foot in the doorway. At this point, Jesse testified that appellant "shot the gun down on the porch" and entered the house.

Jesse reacted to these events by going to the Barney house next door and telling Sam and Sam's mother what he had seen. He then went home to tell his own mother. Mrs. Barney later testified that Jesse reported these events at about 3:30 p. m.

Shortly after hearing Jesse's story, Sam went out to the alley where he observed the appellant exit the victim's house and run down the alley. The appellant stopped to ask Sam how school had been that day and, then, walked toward his own house. Sam observed that the appellant was carrying a gun tucked inside his shirt.

Sam and several other people then went to a window of the victim's house through which they saw her lying on the floor. Thinking that Mrs. Statler had suffered a heart attack, one of the neighbors called the police and fire departments to her house. Upon entering the house, a member of the fire department discovered that Mrs. Statler had been shot. She was immediately transferred to the hospital where she was pronounced dead.

In addition to the testimony of the two witnesses summarized above, the following evidence was offered at trial. A pathologist testified that the victim died of a gunshot wound to the head and that she had received a total of four gunshot wounds, two of which were caused by a single bullet.

A police detective testified that, later in the afternoon of the shooting, the police seized a nine-shot .22 caliber revolver from the Pittman residence. Although the gun belonged to appellant's father, appellant's fingerprints were found on the gun. The revolver contained three expended cartridges, five live rounds and one empty chamber.

Although no bullets were found in the deceased's body, the police did recover one expended bullet near where the deceased had fallen. While the state's expert testified that the slug found in the victim's house could have been fired through the seized revolver, he stated that there were an insufficient number of matching lines to positively match the slug with the pistol.

Immediately upon arriving at the scene of the crime, a police detective took a photograph of a chest of drawers in the living room close to where the victim had fallen. The photograph shows that both drawers are open. Mrs. Gray, a close friend of the victim's, testified that the victim normally kept a very orderly house and that she had never been in the victim's house when the drawers were pulled out. Evidence was also presented that one of appellant's fingerprints appeared on a dresser drawer in the victim's bedroom.

In his defense, appellant offered the testimony of his sister and her friend both of whom stated that appellant had consumed almost a quart of vodka on the morning of the homicide and that he had been drunk. Appellant's mother and a grocery store clerk also testified that appellant appeared to be drunk early that same afternoon.

After the close of the evidence, the judge instructed the jury on the law of murder and voluntary manslaughter. The instruction for murder was taken in toto from the Recommended Arizona Jury Instructions, Crimes 4, Murder, which reads as follows:

"*Murder*

"*Definition, and Distinction of First- and Second-Degree*

"Murder is the unlawful killing of a human being *with* malice.

"The thing that distinguishes murder from all other killings, is malice. There are two kinds of malice. A person has one kind of malice when he deliberately intends to kill. If you determine that the defendant used a deadly weapon in the killing, you may find malice. If you determine that the defendant has no considerable provocation for the killing, you may find malice.

"There is also a second kind of malice. A person has this kind of malice if he shows a reckless disregard for human life.

"Once you have determined that there is malice, you must determine whether the murder was in the first or second degree. First-degree murder is murder which is the result of premeditation. 'Premeditation' means 'deciding in the mind beforehand.' It does not matter how quickly or slowly the decision to kill is followed by the act of killing.

"Murder by means of poison, lying in wait, or torture, or which is committed in the attempt to commit arson, rape, robbery, burglary, mayhem, kidnapping, or molestation of a child under the age of 14, is also first degree murder.

"All other kinds of murder are second degree murder.

"If you have a reasonable doubt about which of the two degrees of murder was committed, you must decide it was second degree murder." (Emphasis in original.) To support the instruction on the felony murder rule, the court also instructed the jury on the law of robbery and burglary. The jury then returned its verdict of first degree murder.

The appellant first alleges that the RAJI instruction on first degree murder inadequately explains the meaning of the term premeditation. Specifically, he alleges that in a case where premeditation is proven circumstantially, and where there is a defense of intoxication, the RAJI instruction places undue emphasis on the rapidity with which the decision to kill may be formed. Consequently, he alleges, fairness requires that the jury be read a further counterbalancing instruction that places equal emphasis on the state's burden of proving that the defendant had an opportunity to truly reflect upon his decision to kill. See *State v. Moore*, 109 Ariz. 111, 506 P.2d 242 (1973); *Moore v. State*, 65 Ariz. 70, 174 P.2d 282 (1946).

■ We reaffirm our recent cases that have held that the RAJI instruction adequately explains the meaning of premeditation to the jury. *State v. Richmond*, 112 Ariz. 228, 540 P.2d 700 (1975); *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976). As we stated in *Childs*:

"This instruction addresses itself to a decision to kill that is made prior to the act of killing. The formation of such a decision is the element of deliberation required for a finding of first degree murder." Id., 553 P.2d at 1196.

While we agree with appellant that a jury could be misled as to the meaning of premeditation by an instruction that places undue emphasis on the rapidity with which the decision to kill may be formed, we cannot agree that the RAJI instruction suffers from that defect. *State v. Childs*, supra. The portion of the instruction reading " 'Premeditation' means 'deciding in the mind beforehand' " certainly does not address itself to the speed with which a decision can be made. Although the following sentence of the instruction emphasizes the rapidity with which the killing may follow the formation of the decision to kill, that segment does not concern itself with the rapidity with which the premeditation can occur.

In our judgment, the RAJI instruction is not misleading as to any element of First Degree Murder and, hence, the defendant is not entitled to any "curative" instruction.

The appellant's next contention is that there was insufficient evidence as a matter of law to support a finding of premeditation or deliberation.

When the sufficiency of the evidence supporting a verdict is questioned on appeal the test to be applied is whether there is substantial evidence in support of the verdict. *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976). The evidence will be considered in the light most favorable to the state and all reasonable inferences will be resolved against the defendant. Id., *State v. Verdugo*, 109 Ariz. 391, 510 P.2d 37 (1973). Reversible error occurs only when there is a complete absence of probative facts to support the conclusion. *State v. Childs*, supra. Furthermore, the law is well settled that premeditation and deliberation may be shown by circumstantial evidence. *State v. Sellers*, 106 Ariz. 315, 475 P.2d 722 (1970); *State v. Bustamante*, 103 Ariz. 551, 447 P.2d 243 (1968); *State v. Lacquey*, 117 Ariz. 231, 571 P.2d 1027 (1977).

Considering all the evidence in this case together, especially the appellant's entry into the victim's house with a gun and his eventual firing of the gun into the victim three times, we find that there was substantial evidence from which a jury could reasonably find the required elements of premeditation and deliberation.

The appellant makes two closely related allegations of error in connection with the judge's instructions on the law of robbery, burglary and the felony murder rule.

First, he alleges that the felony murder rule does not apply to this case because there was insufficient evidence to prove all the elements of the underlying crimes of robbery and burglary. In support of this contention, appellant correctly points out that there was no evidence of a taking of property from the possession of the victim.

Second, he alleges that instructions on robbery and burglary in a situation where there was insufficient evidence to support a finding of either misled the jury into thinking that once they determined that appellant entered the house, "it was then their duty to determine his reason for entering to be consistent with the instruction given."

As to appellant's first argument, it is clear that he misconceives the nature of the felony murder doctrine. In order for the doctrine to be applicable, the state need not prove the actual commission of an underlying felony. Rather the state must prove only that the murder was committed in the perpetration of or *attempt* to perpetrate the underlying felony. A.R.S. § 13–452. The elements of an attempted robbery are intent to commit robbery and an overt act towards that commission. *State v. Vann*, 11 Ariz.App. 180, 463 P.2d 75 (1970). Burglary is the entry of a * * * dwelling house * * * with intent to commit grand or petty theft or any felony. A.R.S. § 13–302.

In our judgment, the use of force to overcome the victim's resistance to the appellant's entry into the residence, the entry into the house with and subsequent use of a lethal weapon, and evidence of appellant's fingerprint on a dresser drawer combine to constitute substantial evidence that the shooting took place during a burglary and/or attempted robbery.

**76**

As to appellant's second argument, since there was substantial evidence to support a finding of burglary, an instruction on the law of burglary was clearly appropriate. Since there was insufficient evidence to support a finding of robbery, we agree that an instruction on the law of robbery would have been unwarranted if the jury had been asked to determine whether there had been a completed robbery. However, the instruction was necessary in this case in order for the jury to properly consider whether the murder had been committed during an attempted robbery.

Pursuant to Rule 43(c) Rules of Civil Procedure, the trial court conducted a hearing to determine if Jesse Rivera was competent to testify. The appellant's final contention is that the hearing demonstrated that Jesse did not understand the difference between truth and falsehood and that he displayed a fundamental ignorance of the nature of an oath or the consequences of violating an oath. Consequently, he alleges, it was error for the trial judge to permit Jesse to testify.

In support of his theory, appellant accurately states that Jesse answered that he could not to the following question of the prosecutor, "Can you tell the judge in your own words what truth is, Jesse; can you formulate or can you make up a little definition and explain to me and the Judge what truth is, what the difference is between a truth and a lie?" When Jesse answered no to this question the prosecutor asked the following, "Let me ask you, is the truth what really happened or what really is, Jesse, you understand the question, Jesse?" Jesse also answered no to this question.

Of course, proof that an eight year old child is incapable of formulating an abstract definition of truth aids us very little in determining whether that child has an intuitive grasp of the difference between truth and falsehood. At the same hearing, Jesse stated that he knew the difference between truth and a lie, and correctly answered a few practical questions that were designed to test his ability to distinguish between the two. Furthermore, he stated that he understood that people are supposed to tell the truth when on the witness stand, that they can go to jail if they do not, and that he "gets spanked" if he tells a lie at home.

 We find that the trial judge did not abuse his discretion in determining that Jesse was competent to testify. *State v. Parker*, 106 Ariz. 54, 470 P.2d 461 (1970); *State v. Phillips*, 102 Ariz. 377, 430 P.2d 139 (1967).

We have thoroughly reviewed the record pursuant to § 13–1715 and find no fundamental error. Judgment affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.