918 P.2d 1028

**STATE of Arizona, Appellee,**

v.

**Kevin Artice MILES, Appellant.**

No. CR–93–0333–AP.

Supreme Court of Arizona,
En Banc.

May 3, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Monica D. Beerling, former Attorney General, Phoenix, for the State of Arizona.

James U. Glanville, Tucson, for Kevin Artice Miles.

OPINION ·

MARTONE, Justice.

Kevin Miles was convicted of first degree murder, one count of dangerous kidnapping, and one count of dangerous armed robbery. The trial court sentenced Miles to death for the murder and to prison terms for the noncapital convictions. Appeal to this court is automatic. *See* Rules 26.15 and 31.2(b), Ariz. R.Crim.P.; A.R.S. § 13-4031. We affirm the convictions and sentences.

## FACTS

On December 7, 1992, Patricia Baeuerlen drove out of her apartment complex and stopped at the intersection of 24th Street and Columbus Avenue in Tucson. Miles, Levi Jackson, and Ray Hernandez were standing near the stop sign. Jackson approached her car and asked for a "light." Vol. Hr'g., Tr., Tape 3 at 31. As she looked away, Jackson pulled out a gun and ordered her to "scoot over." *Id.* Miles, Jackson, and Hernandez then got into the car.

Jackson drove to a desert area on the southeast side of Tucson. Miles held the gun on the victim for a time. After they got to the desert, Jackson shot and killed her. See the companion case of *State v. Jackson*, 186 Ariz. 20, 918 P.2d 1038 (1996). Miles then took the car and left for Phoenix the next day. The Chandler Police arrested him in the early hours of December 9, 1993, after a high speed chase. He had the victim's ATM card, credit card, and personal effects in his possession.

## ISSUES PRESENTED

Miles raises the following issues:

**A. Trial Issues**

1. Did the trial court err in admitting Miles's statements to police detectives?

2. Did the trial court err in instructing the jury on felony murder?

3. Did the trial court err in denying Miles's motion to change venue?

## B. Sentencing Issues

1. Was *Enmund/Tison* satisfied?

2. Was the murder in expectation of pecuniary gain (A.R.S. § 13–703(F)(5))?

3. Was the murder committed in an especially cruel manner (A.R.S. § 13–703(F)(6))?

4. Was the murder committed in a heinous or depraved manner (A.R.S. § 13–703(F)(6))?

5. Was Miles's ability to conform his conduct to the requirements of the law significantly impaired (A.R.S. § 13–703(G)(1))?

6. Is Arizona's death penalty statute constitutional?

7. Did the trial court improperly count A.R.S. § 13–703(F)(6) twice?

### TRIAL ISSUES

## A. Voluntariness of Defendant's Statement

Miles argues that the trial court violated his due process rights by not suppressing his statements to police detectives. He claims that his statements were involuntary for two reasons. First, he contends that his intoxication rendered him incapable of understanding the meaning of his statements. Second, he claims that one of the detectives forced him to talk by implicitly promising him lenient treatment.

▇▇▇▇ The state must show by a preponderance of the evidence that confessions are freely and voluntarily given. *State v. Tucker*, 157 Ariz. 433, 444, 759 P.2d 579, 590 (1988). We examine the totality of the circumstances surrounding a confession. *State v. Ross*, 180 Ariz. 598, 603, 886 P.2d 1354, 1359 (1994), *cert. denied*, — U.S. —, 116 S.Ct. 210, 133 L.Ed.2d 142 (1995).

### 1. Intoxication

▇▇▇ Testimony at trial revealed that Miles had drunk approximately 80 ounces of beer the day before his arrest. He drank at a party on the night of his arrest. Additionally, he claims he had been on a "drug spree" for several days before the murder. He argues that the court should have suppressed his statements because he was "impaired by substance abuse at the onset of the questioning." Opening Brief at 11.

There is no evidence to support a finding that Miles was intoxicated at the time of questioning. He was arrested by the Chandler Police around 3:00 a.m. after a high speed chase. The arresting officer testified that Miles had a "faint odor of alcoholic beverage" on his breath. Tr. Sept. 1, 1993 at 54. However, the officer did not believe Miles was intoxicated. After Miles crashed the car, he jumped out and began running. He was able to hold up his oversized shorts with one hand and run in a straight line. After his arrest, the officer escorted Miles back to the police vehicles and noticed no balance problems. He was then put in a police car and fell asleep. Around 4:00 a.m., the police took him to the Chandler Police Station and put him in a holding cell, where he apparently went back to sleep.

Tucson Police detectives woke him up around 9:30 a.m. the next day. A detective asked him whether he needed time to wake up. Miles replied that he was "okay." Tr. April 28, 1993 at 85. He was then taken to an interview room where he was given *Miranda* warnings. He stated that he understood his rights and waived them. He gave his name, date of birth, social security number, and prior addresses. The detectives said that Miles was not intoxicated when they started talking to him. Early in the interview, Miles was asked whether he was under the influence of alcohol or drugs. He replied that he was "clear headed," not "inebriated," and understood the officers. Vol. Hr'g., Tr., Tape 1 at 2–3, 13. Even if Miles had been intoxicated when he was arrested, there is no evidence that he was intoxicated 6 hours later at his interrogation. We find no error.

### 2. Police Coercion—Implied Promise

▇▇ Miles also claims that his statements were not voluntary because they were made in response to an implied promise of leniency from the police. Miles raises this argument for the first time on appeal, and therefore has waived it. But even if the issue were not waived, there is no evidence of police coercion.

"A confession resulting from a promise is involuntary if (1) police make an express or implied promise and (2) the defendant relies on the promise in confessing. Advice to tell the truth, unaccompanied by either a threat or promise, does not make a confession involuntary." *Ross*, 180 Ariz. at 603, 886 P.2d at 1359. The police interrogated Miles under the following conditions. The interview lasted 5 hours, between 9:30 a.m. and 2:30 p.m. The detectives gave Miles food, drinks, restroom breaks, and cigarettes. During the breaks, Miles was left alone and appeared to fall asleep twice. Each time, Miles woke up on his own and did not appear "whoozy" or "groggy." Tr. Apr. 12, 1993 at 67–68, 80, 86, 89.

Miles claims the following statements show an implied promise of leniency:

Q [by Detective O'Connor]: All right I'm going to drop a bombshell on you, ok, that day that, the murder occurred out there, it was muddy out there and we got shoe print impressions, ok, and they're gonna be compared against your shoes. You got a problem with that Kevin?

A [by Miles]: No.

Q [by Detective Clark]: They look the same.

A [by Miles]: It doesn't matter.

Q: And you've got the same defects in your, your shoe and that's what they check, you know, your shoe's worn down on one side.

A: (inaudible).

Q: Yeah, on the, like do you wear it on the side like ... well mine is that way but you see I walk and the heel is a little bit down, yeah that one's like that too. Do you want to change your story now about those shoes out there?

Kevin, let me ask you somethin'. The shoe prints there and your shoe prints here look, you know just by my eye and his eye, look pretty close. Is it possible that maybe this white guy [Jackson] was the shooter and you were there with'em?

A: I wasn't there.

Q: Did you witness the shooting?

A: No sir.

Q: Were you in that desert where that lady got shot?

A: No.

Q: *Kevin, this is the time for you to, to come clean with us bud, because if, I don't want to see you go away for a murder charge if you were just there and you saw it, no ... here's your chance to tell us, hey I, I told the just, just, you know tell her to take her shoes off.*

A: Alright, alright, yeah, I seen it.

Q: What happened bud?

A: He did it, he did it.

Q: Did you see him shoot the lady?

A: Yeah. I saw him shoot her.

Vol. Hr'g., Tr., Tape 3 at 23–24 (emphasis added).

Detective Clark did not make a promise to Miles. Instead, he stated a fact: If Miles was "just there," then he would not be guilty of murder. *See State v. Lopez*, 174 Ariz. 131, 138, 847 P.2d 1078, 1085 (1992), *cert. denied*, 510 U.S. 894, 114 S.Ct. 258, 126 L.Ed.2d 210 (1993) (detective's statement that he would not discuss the interview with the victim's mother or play a tape of it was a statement of fact and not a promise).

Miles had already told them that the victim was forced to remove her shoes and coat with the apparent intention of leaving her stranded in the desert. Miles claimed he was speaking from the third-person perspective as told him by Jackson. The detectives believed Miles's information came from firsthand knowledge. Thus, Detective Clark's statement, "I don't want to see you go away for a murder charge if you were just there and you saw it," was a statement of fact based on information Miles gave him. The detective's statement foreshadowed Miles's defense at trial. He claimed he was just present during the murder and that he lacked the necessary intent for the underlying felonies of robbery and kidnapping.

Nor did Miles rely upon Clark's words in making his statement. Clark testified that throughout his interview Miles followed a pattern of admitting facts he believed the police already knew ·or could easily verify.

For example, Miles said he used the victim's ATM card only once in Phoenix; but when the detectives told him that they could verify the use of the card through bank records, he admitted using the card more than once and in Tucson. Miles insisted that he had obtained the victim's car in Phoenix on Tuesday; but when the detectives said they could investigate whether he was seen in the car before Tuesday, he admitted that Jackson brought the car to his residence in Tucson on the previous Monday. Finally, when Detective Clark told Miles he could verify whether he had been present at the murder scene through his shoe prints, Miles admitted his presence. Thus, the officers' ability to verify his presence at the murder scene induced Miles to admit his presence, not police coercion.

## B. Felony Murder Instruction

■ The court instructed the jury as follows:

A person commits first degree murder if such person, acting alone or with one or more persons, commits or attempts to commit a robbery or kidnapping; and, *in the course of, and in furtherance of such offense,* such person or another person causes the death of any person ...

With respect to the felony murder rule, insofar as it provides a basis for the charge of first degree murder, it is the law that there is no requirement that the killing occur, quote, while committing, end quote, or, quote, engaged in, end quote, the felony, or that the killing be part of the felony. The homicide need not have been committed to perpetuate the felony. *It is enough if the felony and the killing were part of a same series of events.*

Tr. Apr. 30, 1993 at 82 (emphasis added).

Miles argues that the last sentence invited the jury to ignore the causal connection required between the underlying felonies and the death or, at the least, it permitted the jury to consider a more attenuated causal relationship than permitted by the felony murder statute. See A.R.S. § 13–1105(A)(2). We disagree.

In giving the instruction, the trial court relied on *State v. Richmond,* 112 Ariz. 228,

540 P.2d 700 (1975). In *Richmond,* we held that where the felony and the murder were part of the same series of events, the necessary link between the felony and the murder was satisfied. *Id.* at 232, 540 P.2d at 704. In response, Miles argues that *Richmond* does not apply because it preceded the enactment of the 1978 criminal code. However, after the felony murder statute was amended, we rejected the argument that the addition of the language "in furtherance of" narrowed the application of the felony murder statute. *State v. Arias,* 131 Ariz. 441, 443, 641 P.2d 1285, 1287 (1982). Moreover, the court gave the "in the course of and in the furtherance of" language of the statute. Thus, the instruction taken as a whole does not mislead the jury. *See State v. Schrock,* 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986). Nevertheless, we discourage its use, and recommend the use of the statutory language as illustrated in Recommended Arizona Jury Instruction (Criminal) 11.052. Rudolph J. Gerber, *Recommended Arizona Jury Instructions (Criminal)* § 11.052, at 89 (1989).

■ There is no doubt that the murder was "in furtherance" of the robbery and kidnapping. A death is "in furtherance" of the underlying felony if the death resulted from an action taken to facilitate the accomplishment of one or more of the predicate felonies. *Arias,* 131 Ariz. at 443, 641 P.2d at 1287. Here, the victim was murdered to obtain her car and its contents. The robbery and kidnapping continued through the time of the murder. The victim was killed before the completion of the robbery. There was no error.

## C. Change of Venue

Miles argues that the "car jacking," the age of the defendants, and his interview by Channel 9 News in Tucson generated an overwhelming amount of pretrial publicity, and therefore the trial court should have granted his motion for change of venue.

"There is a two-step inquiry for pretrial publicity: (1) did the publicity pervade the court proceedings to the extent that prejudice can be presumed?; if not, then (2) did defendant show actual prejudice among

members of the jury?" *State v. Stokley,* 182 Ariz. 505, 513, 898 P.2d 454, 462 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 787, 133 L.Ed.2d 737 (1996).

To presume prejudice, Miles must show pretrial publicity "so unfair, so prejudicial, and so pervasive that the [court] cannot give credibility to the juror's answers during voir dire." *State v. Bolton,* 182 Ariz 290, 300, 896 P.2d 830, 840 (1995).

The media coverage was not pervasive or outrageous. According to Miles, all three major networks, the *Tucson Citizen,* and *The Arizona Daily Star* reported the crime. Channels 4 and 9 ran "in-depth" stories about murders by Pima County juveniles which featured the victim's murder. But Miles fails to indicate how many articles were published about the murder. Nor does he explain how the articles were false or unfair. Except for his interview, Miles fails to describe the news coverage.

Miles consented to an interview by Channel 9 News shortly after his capture. He admitted that he was present during the crime, but denied any wrongdoing.[1] Having consented to the interview, he is hard pressed to complain about it. Moreover, the interview was not inconsistent with his defense at trial, where he admitted he was present during the crime. His defense was that he lacked the necessary intent for the underlying felonies. We will not presume prejudice.

Nor has Miles shown actual prejudice. Three potential jurors were struck for cause because they felt they could not be impartial due to pretrial publicity. The remaining jurors answered that they had not heard about the crime, except for one who had a vague recollection about what he had read in the newspapers. That juror, however, said that he would not allow anything he heard influence his verdict. There was no error.

**SENTENCING ISSUES**

Under A.R.S. § 13–703(C), the state has the burden of proving beyond a reasonable doubt the existence of the aggravating circumstances contained in § 13–703(F). *State v. Spencer,* 176 Ariz. 36, 42, 859 P.2d 146, 152 (1993). The defendant has the burden of proving by a preponderance of the evidence the existence of any mitigating circumstances. *Id.;* A.R.S. § 13–703(C). We independently review the record to determine the propriety of the death sentence. A.R.S. § 13–703.01(A); *Spencer,* 176 Ariz. at 42, 859 P.2d at 152.

### A. *Enmund/Tison*

Miles argues that his death sentence should be vacated because the state failed to show that he was death eligible under *Enmund/Tison.* See *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Miles claims he was not a "major participant" in the robbery and kidnapping, and did not exhibit a "reckless indifference" toward human life. See *Tison,* 481 U.S. at 158, 107 S.Ct. at 1688. We disagree.

Miles was a major participant in the crimes. He admits he accompanied his co-defendants to steal the gun. He waited with them at the street corner while Jackson found a victim. He got into the car after Jackson commandeered it. He admits he held the gun on the victim while Jackson drove to the desert. He was present when Jackson shot the victim. Later that evening, he took her car and used her ATM and credit cards.

Miles also showed a reckless indifference toward human life. He admits that before the "car jacking" Jackson told him, "[h]e was gonna get somebody's car, take'em off in the middle of the desert and shoot'em." Vol. Hr'g., Tr., Tape 3 at 34. Miles claims he did not believe Jackson, and therefore he was not reckless. This argument is disingenuous. Miles knew of Jackson's intentions before-

---

1. For example, Miles stated, "I didn't shoot that woman. I didn't, I didn't really, I didn't, all I did was ride. All I did was ride in the back seat of the car up there y'know, and that's about it, really." Opening Brief Appendix Exhibit 1.

hand. Nevertheless, he went along with Jackson to get the gun. He got in the car after Jackson "car jacked" the victim and rode along to the desert. For a period of time, he held the gun on the victim. He then watched as Jackson shot the victim.

## B. Aggravation

The trial court found the following aggravating circumstances: (1) Miles had been previously convicted of three separate crimes involving the use or threatened use of violence under § 13–703(F)(2);[2] (2) the murder was committed for pecuniary gain under § 13–703(F)(5); and (3) the murder was committed in an especially cruel, heinous, or depraved manner under § 13–703(F)(6). Miles challenges the latter two findings.

### 1. Pecuniary Gain

Miles argues that the state did not prove that his "motive" was the expectation of pecuniary gain. Instead, he claims that he "rode along" with Jackson and Hernandez because he wanted the murder weapon to commit a robbery.

On the day of the murder, either Jackson or Hernandez told Miles that they were getting the murder weapon to obtain money. Just before the abduction, Jackson told Miles that "he was gonna get somebody's car, take'em off in the middle of the desert and shoot them." Vol. Hr'g., Tr., Tape 3 at 34. Miles contends that he did not believe Jackson. Yet, hours after the murder Miles was driving the victim's car and using her ATM card. He told a friend the victim's car was his. The morning after the murder, he took the car and drove alone to Phoenix. He withdrew money from the victim's bank account and used her credit card at local malls. The Chandler Police apprehended Miles that night after he crashed the car into a guard rail. The police found the victim's ring, earrings, ATM card, and credit card in his possession. We agree with the trial court that the murder was committed for pecuniary gain.

### 2. Cruelty

Miles argues the trial court's cruelty finding is not supported by the evidence because he did not cause or intend to cause mental anguish. We disagree.

A crime is committed in an especially cruel manner when the perpetrator inflicts mental anguish or physical abuse before the victim's death. *State v. Walton*, 159 Ariz. 571, 586, 769 P.2d 1017, 1032 (1989). Mental anguish includes a victim's uncertainty as to her ultimate fate. *Id.*

Miles participated extensively in the kidnapping and abduction. He went to get the gun, drove in the car, held the gun during the drive to the desert, and stood nearby while Jackson shot her. During the 25–30 minute drive, Miles described the victim as "scared to death." Vol. Hr'g., Tr., Tape 4 at 2. At the scene of the murder, Miles said he heard her cry and plead for her life. According to Miles, "she said, I'll do anything you want, don't hurt me. And she said that . . . a few times. It was like she just kept saying it over and over." *Id.* at 4. Miles saw the victim drop to her knees as Jackson shot her. All of this was reasonably foreseeable. We agree with the trial court that the murder was especially cruel.

### 3. Heinous and Depraved

Heinousness and depravity focus on the defendant's state of mind as shown by his actions. The trial court based its heinous or depraved finding on two of the five *Gretzler* factors: (1) the senselessness of the murder, and (2) the helplessness of the victim. The court also found witness elimination.

The state proved senselessness. The murder was not necessary to complete the criminal objective. Miles could have easily obtained the victim's money and vehicle without killing her. She was driven to a remote desert area where Jackson forced her to take off her shoes, jacket and, for a brief period, her pants. Miles, Jackson, and Hernandez could have left her in the desert and

---

2. Miles does not contest this finding. At trial, he stipulated that he had been previously convicted of three dangerous felonies (armed robbery).

stolen her car and valuables without fear of immediate detection.

The state also proved helplessness. The victim was unarmed and shoeless. She was outnumbered 3 to 1 and did not resist. The evidence showed that the bullet first passed through her forearm before it pierced her heart. This is consistent with the finding that she had her hands up in a defensive position before she was shot.

The state, however, did not prove that the murder was committed to eliminate the victim as a witness. We defined the circumstances under which witness elimination can be found in *State v. Ross,* 180 Ariz. 598, 606, 886 P.2d 1354, 1362 (1994) (where defendant states witness elimination is motive for murder; where murder victim is witness to other crime and is killed to prevent that person from testifying; where extraordinary circumstances exist). While *Ross* had not been decided at the time of sentencing, we find no evidence to support a finding of witness elimination under any of the *Ross* categories.

We are left with senselessness and helplessness, which ordinarily are not sufficient to prove heinousness or depravity. *Ross,* 180 Ariz. at 607, 886 P.2d at 1363. After reviewing the record, we conclude the state did not prove beyond a reasonable doubt that the murder, at least as to Miles, was committed in an especially heinous or depraved manner.

## C. Mitigation

### 1. A.R.S. § 13–703(G)(1)—Ability to Conform Conduct Significantly Impaired

Miles argues that the court erred by not finding that his ability to conform his conduct to the requirements of the law was significantly impaired by his drug use. See A.R.S. § 13–703(G)(1). As a threshold issue, Miles claims that the court improperly excluded testimony by his psychologist.

#### a. Exclusion of Psychologist's Testimony

 Miles sought to introduce expert testimony about how his crack cocaine abuse affected his judgment at the time of the murder. The court excluded this testimony

for lack of foundation. A.R.S. § 13–703(C) provides that a defendant may present any *relevant* mitigating evidence, without regard to admissibility under the rules of evidence. (emphasis added). We agree with the trial court that the relevance requirement of § 13–703(C) necessarily means that proper foundation must be laid for an expert to express an opinion.

On voir dire, a psychologist testified that he did not know how often, and in what quantities, Miles had taken crack cocaine before the murder. He thus had no basis upon which to render an opinion about the effects of crack cocaine use at the time of the murder, even if he was otherwise qualified as an expert witness. We find the trial court properly excluded the testimony.

#### b. A.R.S. § 13–703(G)(1) Finding

 Miles claims that his judgment was impaired by drugs at the time of the crimes. We disagree.

There is no evidence that Miles was under the influence of drugs at the time of the murder. Although there was evidence that Miles used drugs in the weeks before the murder, he admitted that he had not used drugs on the day of the crimes. The psychologist could not express an opinion on how Miles's crack cocaine use on the night before the murder had affected his judgment, because he did not know how often or how much crack cocaine Miles had taken. The bald assertion that he abused drugs the night before the murder does not satisfy the § 13–703(G)(1) circumstance.

### D. Constitutionality of Arizona's Death Penalty Statute

Miles's arguments that the death penalty statute is unconstitutional are foreclosed by prior decisions.

We rejected the argument that the equal protection clause requires that the jury, and not the judge, decide whether aggravating and mitigating circumstances exist in *State v. West,* 176 Ariz. 432, 454, 862 P.2d 192, 214 (1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994).

We rejected the argument that proportionality review is required by the federal constitution in *State v. Salazar*, 173 Ariz. 399, 416, 844 P.2d 566, 583 (1992), *cert. denied*, 509 U.S. 912, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993).

We rejected the argument that the death penalty statute is unconstitutional because it precludes the trial court from considering all relevant mitigating circumstances in *State v. White*, 168 Ariz. 500, 514, 815 P.2d 869, 883 (1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

We rejected the argument that the death penalty statute is unconstitutional because it mandates the imposition of the death penalty when the trial court finds an aggravating circumstance and does not find any mitigation sufficiently substantial to call for leniency in *Salazar*, 173 Ariz. at 411, 844 P.2d at 578.

We rejected the argument that the death penalty is unconstitutional because it places upon the defendant the burden of proving mitigating circumstances in *State v. Stanley*, 167 Ariz. 519, 532, 809 P.2d 944, 957 (1991), *cert. denied*, 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991).

We rejected the argument that the death penalty is unconstitutional because the judge, rather than the jury, makes factual findings necessary for the imposition death in *State v. Atwood*, 171 Ariz. 576, 646, 832 P.2d 593, 663 (1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

We rejected the argument that the death penalty statute is unconstitutional because its lacks guidelines for weighing aggravation and mitigation in *State v. Spencer*, 176 Ariz. 36, 859 P.2d 146 (1993), *cert. denied*, 510 U.S. 1050, 114 S.Ct. 705, 126 L.Ed.2d 671 (1994).

We rejected the argument that the death penalty is unconstitutional because it denies the right to voir dire the trial judge in *West*, 176 Ariz. at 454–55, 862 P.2d at 214–15.

Finally, we rejected the argument that prosecutorial discretion to pursue the death penalty is unconstitutional in *Atwood*, 171 Ariz. at 646, 832 P.2d at 663.

## E. Counting of F(6) Factor

In its special verdict, the trial court found that the state had established the following 4 statutory aggravating factors: (1) under § 13–703(F)(2) defendant had been previously convicted of three separate crimes involving the use or threatened use of violence; (2) under § 13–703(F)(5) defendant committed the crimes in the expectation of receipt of pecuniary value; (3) under § 13–703(F)(6) defendant committed the murder in an especially cruel manner; and (4) again under § 13–703(F)(6) defendant committed the murder in an especially heinous manner.

Miles argues that the trial court improperly counted the F(6) factor as two separate aggravating factors. It is true that the trial judge referred to cruelty as an (F)(6) aggravating circumstance and also to heinousness as an (F)(6) aggravating circumstance. Of course, cruelty without heinousness can support an (F)(6) factor, and heinousness without cruelty can support an (F)(6) factor. It is perhaps in that sense that the trial judge referred to two (F)(6) factors, but this would be an imprecise characterization. There is a single (F)(6) factor, and the trial judge erred when he characterized them as two separate (F)(6) factors.

As it turns out, the issue is now moot because, although we have upheld the cruelty finding, we have struck the heinousness finding. Though this moots Miles's double counting argument, we must consider this in our independent review and reweighing.

## F. Independent Review and Reweighing

 We are required to decide independently if the mitigation is sufficiently substantial to warrant leniency whenever there is error in the aggravation or mitigation findings. A.R.S. § 13–703.01(B). This is not a case for remand because there is no erroneous exclusion of evidence, and the record is adequate. *See* A.R.S. § 13–703.01(C). We have considered each of the three statutory aggravating factors. We have looked at the (F)(6) factor anew, independently supported by the cruelty finding, but without the heinousness finding. We agree that Miles failed to prove any statutory mitigating circumstances. The state does not contest the non-

statutory mitigating circumstances found by the trial court and therefore we take them as a given: (1) Miles was convicted of felony murder; (2) at one time he had a reputation for nonviolence; (3) he now feels remorse; and (4) his mother died, he is separated from his wife and child, he lost his job, and he uses alcohol and drugs.

In light of the deletion of heinousness, we reweigh but on independent review conclude that the equation does not change. The mitigation is insufficiently substantial to call for leniency.

### DISPOSITION

We reviewed the record for fundamental error and found none before we decided *State v. Smith,* 184 Ariz. 456, 460, 910 P.2d 1, 5 (1996) (holding that the repeal of A.R.S. § 13–4035 is procedural and not substantive and therefore fully retroactive); *see also State v. Kemp,* 185 Ariz. 52, 67, 912 P.2d 1281, 1296 (1996). For the foregoing reasons, we affirm Miles's convictions and sentences.

FELDMAN, C.J., ZLAKET, V.C.J., MOELLER, J., and ROBERT J. CORCORAN, Justice, Retired, concur.