IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA,**
*Petitioner,*

*v.*

**KEVIN ARTICE MILES,**
*Respondent.*

No. CR-16-0021-PC
Filed April 10, 2018

Appeal from the Superior Court in Pima County
The Honorable Stephen C. Villarreal, Judge
No. CR040238

**AFFIRMED AND REMANDED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor General, Lacey Stover Gard (argued), Chief Counsel, Capital Litigation Section, Tucson, John Pressley Todd, Special Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Jon M. Sands, Federal Public Defender, Cary Sandman (argued), Leticia Marquez, Assistant Federal Public Defenders, Tucson, Attorneys for Kevin Artice Miles

David J. Euchner (argued), Tucson, Attorney for Amici Curiae Arizona Attorneys for Criminal Justice and Pima County Public Defender

Amy Armstrong, Emily Skinner, Phoenix, Attorneys for Amicus Curiae Arizona Capital Representation Project

_____

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BALES and JUSTICE BRUTINEL joined. VICE CHIEF JUSTICE PELANDER, joined by JUSTICE GOULD and JUDGE SWANN[*] concurred. JUDGE SWANN, joined by VICE CHIEF JUSTICE PELANDER and JUSTICE BOLICK concurred.

_____

JUSTICE TIMMER, opinion of the Court:

¶1        A defendant convicted of felony murder is eligible for the death penalty only if he himself killed, attempted to kill, or intended that a killing occur or that lethal force be used, *Enmund v. Florida*, 458 U.S. 782, 797 (1982), or was a major participant in a felony and acted "with reckless indifference to human life," *Tison v. Arizona*, 481 U.S. 137, 158 (1987). We hold that in determining if a defendant acted with "reckless indifference," the factfinder may consider evidence of the defendant's diminished capacity.

## BACKGROUND

¶2        In 1992, Kevin Artice Miles, along with juvenile accomplices Levi Jackson and Ray Hernandez, carjacked Patricia Baeuerlen and drove her to the desert, where Jackson shot and killed her. The next year, a jury found Miles guilty of first degree felony murder, kidnapping, and armed robbery. The trial court sentenced Miles to death. (Arizona juries were not authorized to impose the death penalty until 2002. *See* A.R.S. §§ 13-751, -752.) After conducting an independent review, this Court affirmed. *State v. Miles (Miles I)*, 186 Ariz. 10, 12 (1996). In doing so, we found that Miles was death-eligible under *Tison* because he was a major participant in the crimes and had shown a reckless indifference toward human life. *Id.* at 16–17. The trial court denied Miles's subsequent request for postconviction relief ("PCR").

¶3        In 2014, after unsuccessfully pursuing habeas corpus relief in federal court, see *Miles v. Ryan (Miles II)*, 713 F.3d 477, 479 (9th Cir. 2013), Miles initiated his second PCR proceeding. He asserted that relief was

_____

[*]        Justice John R. Lopez, IV has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Peter B. Swann, Judge of the Arizona Court of Appeals, Division One, was designated to sit in this matter.

warranted under Arizona Rule of Criminal Procedure 32.1(h) because newly discovered mitigation evidence demonstrated that the sentencing court would not have imposed the death sentence had the evidence been known.

¶4　　　　Following an evidentiary hearing, the PCR court granted Miles relief by commuting his death sentence to a life sentence. The court found that at the time of the murder, Miles suffered from "neurochemical, neurocognitive, and neurobehavioral impairments" caused by the combined effects of cocaine withdrawal syndrome and alcohol related neurodevelopmental disorder ("ARND"), which resulted from in utero alcohol exposure. As a result, although Miles was concededly a major participant in the crimes, the court found he was ineligible for the death penalty under *Tison* because reasonable doubt existed whether he acted with the requisite reckless mental state.

¶5　　　　Alternately, the court ruled that if Miles were death-eligible under *Tison*, he would nevertheless be entitled to "a resentencing to allow the factfinder to re-weigh the aggravating and mitigating factors" because he sufficiently demonstrated that the sentencing court would not have imposed the death penalty had it known of Miles's mental-health deficiencies.

¶6　　　　We granted review of two issues raised by the State, both of which are matters of statewide importance: (1) Did the PCR court err by admitting diminished-capacity and voluntary-intoxication evidence in the *Tison* inquiry? (2) Can newly proffered mitigation ever constitute clear and convincing evidence under Rule 32.1(h) that a sentencer would not have imposed the death penalty? We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-102(A).[1]

**DISCUSSION**

¶7　　　　We review a court's ruling on a PCR petition for an abuse of discretion. *State v. Pandeli*, 242 Ariz. 175, 180 ¶ 4 (2017). But an abuse of discretion occurs if the court makes an error of law, and we review legal conclusions de novo. *Id.*

---

[1]　　　Unless otherwise noted, we cite the current versions of statutes and rules.

## I. Rule 32.1(h)

¶8        When Miles filed the PCR petition in 2014, Rule 32.1(h) (2000) authorized relief if "[t]he defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty."[2]  Because Miles challenged only the imposition of the death penalty and not his murder conviction, he was required to prove that "the court would not have imposed the death penalty."  Ariz. R. Crim. P. 32.1(h) (2000).  "The court" necessarily refers to the sentencing court as it "imposed the death penalty."

¶9        The State urges us to narrowly construe Rule 32.1(h) consistent with the "actual innocence" exception to barring successive, abusive, or defaulted federal habeas claims.  *See Sawyer v. Whitley*, 505 U.S. 333, 335–36 (1992).  Under that exception, relief is permitted only when a defendant shows by clear and convincing evidence that no reasonable factfinder would have found him *eligible* for the death penalty.  *Id*. at 336.  Miles and amicus Arizona Capital Representation Project assert that Rule 32.1(h) is more expansive, also authorizing relief if the defendant shows by clear and convincing evidence that he is not deserving of the death penalty in light of newly developed mitigation evidence.

¶10       We need not resolve this interpretation dispute.  As explained hereafter, we affirm the PCR court's ruling that Miles is ineligible for the death penalty under *Tison* and therefore do not address the court's alternate basis for its ruling.  Even under the State's narrow reading of Rule 32.1(h), a defendant can be granted relief under Rule 32.1(h) for a *Tison* error.

¶11       In his concurrence, Justice Pelander describes the version of Rule 32.1(h) in effect in 2014 as "perplexing" as it required the PCR court to speculate about how the sentencing judge, now deceased, would have sentenced Miles had the judge known of the new mitigation evidence.  *See infra* ¶¶ 29–30.  But Rule 32.1(h) does not refer to the sentencing judge (or since 2002, a jury), and construing the rule as imposing a subjective standard would require a PCR court to speculate about a particular

---

[2]        Effective January 1, 2018, Rule 32.1(h) authorizes postconviction relief if "the defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would find the defendant guilty beyond a reasonable doubt, or that the death penalty would not have been imposed."

sentencer's ruling — an unmanageable, if not impossible, standard. The better reading is that Rule 32.1(h)'s reference to "the court" means a reasonable sentencer, whether a judge or a jury.

## II. Admissibility of evidence in *Tison* inquiry

**¶12**      The State argues that Miles did not satisfy his Rule 32.1(h) burden because evidence he suffered from cocaine withdrawal syndrome and ARND was inadmissible to refute the mental state required for a *Tison* death-eligibility finding. Contrary to Miles's assertion, the State adequately preserved this issue.

**¶13**      The Eighth Amendment prohibits "all punishments which by their excessive length or severity are greatly disproportioned to the offenses charged." *Tison*, 481 U.S. at 148 (internal citation and quotation marks omitted). Before a defendant convicted of first degree felony murder can be sentenced to death, an *Enmund/Tison* finding must be made to ensure that this sentence is proportionate to the defendant's "personal responsibility and moral guilt." *Enmund*, 458 U.S. at 801; *see also Tison*, 481 U.S. at 149. The *Enmund/Tison* inquiry does not concern the guilt or innocence of the defendant but acts as an Eighth Amendment sentencing restraint. *See State v. Ring*, 204 Ariz. 534, 563 ¶ 98 (2003). Thus, the inquiry is made postconviction during the trial's aggravation phase. *See* A.R.S. § 13-752(P); *State v. Forde*, 233 Ariz. 543, 566 ¶ 89 (2014).

**¶14**      The culpable reckless mental state under *Tison*, the inquiry at issue here, is a subjective one. *See Forde*, 233 Ariz. at 567 ¶ 96. The State must prove that the defendant "subjectively appreciated that [his] acts were likely to result in the taking of innocent life." *State v. Lynch*, 225 Ariz. 27, 36 ¶ 43 (2010) (internal quotation marks omitted) (quoting *Tison*, 481 U.S. at 152). Because evidence of diminished capacity and voluntary intoxication is relevant to deciding whether a defendant subjectively appreciated that his acts were likely to result in another's death, this evidence is admissible in the *Tison* inquiry if otherwise admissible under our evidentiary rules. *Cf.* A.R.S. § 13-751(B) (providing that the rules of evidence apply in the aggravation phase to determine existence of aggravating circumstances); *State v. Schackart*, 175 Ariz. 494, 502 (1993) (deciding that the state's expert opinion evidence that no examiner could accurately diagnose a defendant's mental state at the time of the murder was relevant to rebut the defense expert's testimony that the defendant convicted of felony murder did not act with the mental state required by *Enmund*).

¶15 The State argues that using diminished-capacity and voluntary-intoxication evidence, like that relied on by the PCR court here, to find that a defendant lacked the culpable mental state required by *Tison* frustrates legislative intent and leads to inconsistent and illogical results.

¶16 In *State v. Mott*, 187 Ariz. 536 (1997), we recognized that the legislature, not this Court, is responsible for promulgating the criminal law. *Id.* at 541. Because the legislature had purposely declined to adopt a 1962 Model Penal Code provision that permitted a diminished-capacity defense to a criminal charge, we concluded that "Arizona does not allow evidence of a defendant's mental disorder short of insanity either as an affirmative defense or to negate the mens rea element of a crime." *Id.* at 540–41; *see also* A.R.S. § 13-502 (allowing only mental disorders or defects that constitute legal insanity as a defense to criminal responsibility); *Clark v. Arizona*, 548 U.S. 735, 762 (2006) ("*Mott* is meant to confine to the insanity defense any consideration of characteristic behavior associated with mental disease."); *State v. Leteve*, 237 Ariz. 516, 524 ¶ 20 (2015) ("The legislature has not provided for, and this Court has refused to allow, an affirmative defense of diminished capacity.").

¶17 The State recognizes that *Mott* and its progeny concerned guilt-phase evidence but nevertheless argues that our reasoning there logically extends to preclude diminished-capacity evidence in the *Tison* inquiry. It points out that the legislature has not authorized a diminished-capacity defense to any allegation made in the aggravation phase, including a claim that *Tison* is satisfied. And in capital cases, the legislature has provided for broad admission of mental-health evidence in the penalty phase and adopted a diminished-capacity mitigating factor, reflecting its intent that diminished-capacity evidence be considered only as mitigation. *See* A.R.S. § 13-751(G)(1) (listing as a mitigator that the defendant's capacity to appreciate the wrongfulness of his conduct or conform his conduct to legal requirements was "significantly impaired"); *id.* § 13-752(G) (authorizing the defendant to "present any evidence that is relevant to the determination of whether there is mitigation that is sufficiently substantial to call for leniency"). Following *Mott*'s reasoning, the State asserts, because the legislature has not authorized consideration of diminished-capacity evidence for the *Tison* inquiry, the courts cannot consider it.

¶18 We disagree. Although the legislature is tasked with enacting the criminal laws in Arizona, those laws are subject to constitutional restraints, including the Eighth Amendment. *See* U.S. Const. art. VI; Ariz. Const. art. 2, § 3. The United States Supreme Court devised the *Enmund/Tison* inquiry to protect the Eighth Amendment rights of a

defendant convicted of capital felony murder. *See Ring*, 204 Ariz. at 564–65 ¶ 101 (discussing how *Enmund/Tison*, as a "judicially crafted instrument used to measure proportionality between a defendant's criminal culpability and the sentence imposed," is conceptually distinct from finding the statutory criminal elements of a crime). As such, its scope is not defined by legislative action but by judicial application of Eighth Amendment principles. *Cf. Enmund*, 458 U.S. at 797 ("Although the judgments of legislatures, juries, and prosecutors weigh heavily in the balance, it is for us ultimately to judge whether the Eighth Amendment permits imposition of the death penalty on one . . . who aids and abets a felony in the course of which a murder is committed . . . .").

**¶19** The State relatedly argues that "there is no persuasive reason" to preclude diminished-capacity evidence to defend the mental state attendant to a criminal charge but permit it in the *Tison* inquiry, and doing so undermines legislative authority. This argument again ignores the distinction between the elements of a crime, which the legislature has authority to define, and the elements of the *Tison* inquiry, which are directed by the Eighth Amendment. The legislature's choice to preclude a diminished-capacity defense to a felony murder charge cannot restrict application of the Eighth Amendment in sentencing a defendant convicted of that charge.

**¶20** The State also argues that permitting a diminished-capacity defense in the *Tison* inquiry could be illogical if the predicate felony underlying the murder conviction required proof of a greater mental state, like knowingly or intentionally (as did the kidnapping and armed robbery charges of which Miles was convicted). But the legislature's decision to reject a diminished-capacity defense in the guilt-phase does not logically require the courts to ignore diminished-capacity evidence when deciding whether a defendant subjectively appreciated that his acts were likely to result in a victim's death, making him eligible for the death penalty.

**¶21** We are also unpersuaded that we should reach a different conclusion because consideration of diminished-capacity evidence in the *Tison* inquiry could result in a de facto penalty phase, confuse a jury, and hinge death eligibility on inexact mental-health evidence. None of these concerns supports categorically precluding mental-health evidence that bears on an inquiry necessary to protect against an Eighth Amendment violation. Notably, trial courts can exclude mental-health evidence that is not relevant or reliable or that would result in juror confusion. *See* Ariz. R. Evid. 401–03, 702–03.

¶22    The State next argues that the PCR court violated A.R.S. § 13-503 (1994) by admitting evidence of voluntary intoxication to negate the *Tison* culpable mental state.   (The State equates cocaine withdrawal syndrome with voluntary intoxication.  We do not decide that issue here but assume the State is correct.)  Section 13-503 currently provides:

> Temporary intoxication resulting from the voluntary ingestion, consumption, inhalation or injection of alcohol, an illegal substance under chapter 34 of this title or other psychoactive substances or the abuse of prescribed medications does not constitute insanity and is not a defense for any criminal act *or requisite state of mind*.

(emphasis added); *see also State v. Payne*, 233 Ariz. 484, 517 ¶ 149 (2013) (stating that § 13-503 prohibits the jury from using voluntary intoxication to negate the state of mind needed to prove an aggravating circumstance); *State v. Boyston*, 231 Ariz. 539, 550 ¶¶ 52, 54 (2013) (holding that the trial court did not err by excluding voluntary-intoxication evidence to challenge premeditation).

¶23    We must apply the version of § 13-503 in effect at the time of the crimes. *See State v. Moody*, 208 Ariz. 424, 466 ¶ 191 (2004) ("[T]he Ex Post Facto Clauses of the United States and Arizona Constitutions require that the version of § 13-503 in effect at the time the crimes were committed be applied.").   In 1992, § 13-503 was much narrower, addressing only voluntary intoxication as a defense to the crime charged:

> No act committed by a person while in a state of voluntary intoxication *is less criminal* by reason of his having been in such condition, but when the actual existence of the culpable mental state of intentionally or with the intent to is a necessary element to constitute any particular species or degree of offense, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the culpable mental state with which he committed the act.

A.R.S. § 13-503 (1989) (emphasis added).  Because the *Tison* finding does not address whether a defendant's acts were "less criminal," the version of § 13-503 in effect at the time of the crimes here did not preclude evidence of voluntary intoxication to rebut evidence of the *Tison* mental state.  We leave for another day whether the current version of § 13-503 can preclude such evidence.

¶24 The PCR court did not err by relying on diminished-capacity and voluntary-intoxication evidence in deciding that the court would not have found Miles death-eligible under *Tison* had it known of this evidence. As the State expressly acknowledged at oral argument here, it does not challenge the sufficiency of this and other evidence to support the PCR court's finding, and we therefore do not address that issue. Likewise, and because the State did not raise an objection under Arizona Rule of Evidence 702 before the trial court or this Court, we do not address Judge Swann's concurring opinion. Finally, because we affirm the PCR court's *Tison* ruling, we need not address either the efficacy of the court's alternative ruling that the trial court would not have imposed the death penalty had it known of Miles's mental-health deficiencies or the State's argument that newly proffered mitigation evidence can never constitute clear and convincing evidence under Rule 32.1(h) that a sentencer would not have imposed the death penalty.

## CONCLUSION

¶25 We affirm the PCR court's order commuting Miles's death sentence to a life sentence. We remand to that court to clarify that the life sentence is one with the possibility of release after twenty-five years, the only type of life sentence available at the time of the crimes. *See* A.R.S. § 13-703(A)(1) (1989).

VICE CHIEF JUSTICE PELANDER, joined by JUSTICE GOULD and
JUDGE SWANN, concurring:

**¶26**        I concur with the Court's analysis and holding that, based on
the law applicable to this case, evidence of diminished capacity and
voluntary intoxication (assuming cocaine withdrawal syndrome qualifies
as such) could support a finding that a felony-murder defendant like Miles
lacked the culpable mental state of "reckless indifference" constitutionally
required for death-eligibility under *Tison v. Arizona*, 481 U.S. 137, 158 (1987).
I also agree that the PCR court did not abuse its discretion in overturning
Miles's death sentence, *supra* ¶¶ 7, 24, assuming the evidence on which that
ruling was based was admissible and sufficient (points the State does not
now contest), and assuming the law authorized (or required) the PCR court
to grant such relief.  *See* A.R.S. § 13-4231(1) (authorizing post-conviction
relief when "the sentence was in violation of the Constitution of the United
States"); Ariz. R. Crim. P. 32.1(a) (same).

**¶27**        I write separately because I find problematic the rule under
which the PCR court granted relief, Arizona Rule of Criminal Procedure
32.1(h).  That rule, which has no constitutional or statutory counterpart, was
added by this Court in 2000.  As then adopted, and as applicable to the PCR
proceeding here, the rule allows a petitioner to obtain post-conviction relief
if he demonstrates by "clear and convincing evidence that the facts . . .
would be sufficient to establish that no reasonable fact-finder would have
found the defendant guilty of the underlying offense beyond a reasonable
doubt, or that the court would not have imposed the death penalty."  Ariz.
R. Crim. P. 32.1(h).  Thus, this rule essentially permits a new claim of "actual
innocence" or, if a death sentence is challenged, a claim of "actual innocence
of the death penalty."  The Rule 32 committee's petition (R-97-0006) that
prompted this rule change did not include or propose the final phrase, "or
that the court would not have imposed the death penalty."  *Id.*
Nonetheless, that language was added by this Court without circulation for
comment and without explanation of its meaning or practical application.

**¶28**        Miles never argued that "no reasonable fact-finder would
have found [him] guilty of the underlying offense beyond a reasonable
doubt," *id.*, let alone that the 1993 jury would not have found him guilty.
Thus, the PCR court's alternative rulings, *see supra* ¶¶ 4–5, are supportable,
if at all, only under the rule's last phrase, that on considering the new facts

"the court would not have imposed the death penalty." Ariz. R. Crim. P. 32.1(h). Two points regarding that text are noteworthy and raise serious concerns about the standard for relief under the rule. First, "the court" referred to in Rule 32.1(h) apparently means the sentencing court that imposed the death penalty, here the late Judge William Tinney in 1993.[3] My colleagues seemingly agree. *See supra* ¶ 8.

**¶29** Second, the rule requires a capital defendant to show, and the PCR court to find, by clear and convincing evidence that the sentencing court "*would not have* imposed the death penalty."[4] Ariz. R. Crim. P. 32.1(h)

---

[3] The PCR court found that "the court" in Rule 32.1(h) means either the sentencing court or this Court because in this case, we independently reviewed the aggravation and mitigation findings and the propriety of the death sentence on direct appeal. *State v. Miles*, 186 Ariz. 10, 19–20 (1996). But because this Court has never "imposed the death penalty," Ariz. R. Crim. P. 32.1(h), and is not authorized to do so, the "court" referred to in the rule must mean the sentencing court.

[4] This language in our rule materially differs from the arguably more sensible, and workable, language used in other states' parallel provisions. *See, e.g.*, Cal. Penal Code § 1509(d) (providing that "[a]n initial petition which is untimely . . . shall be dismissed unless the court finds, by the preponderance of all available evidence, whether or not admissible at trial, that the defendant is actually innocent of the crime of which he or she was convicted *or is ineligible for the sentence*" (emphasis added); )); N.C. Gen. Stat. Ann. § 15A-1415(c) (providing that "a defendant at any time after verdict may . . . raise the ground that evidence is available which was unknown or unavailable to the defendant at the time of trial, which could not with due diligence have been discovered or made available at that time, . . . and which has a direct and material bearing upon *the defendant's eligibility for the death penalty* or the defendant's guilt or innocence" (emphasis added)); Ohio Rev Code Ann. § 2953.21(A)(1)(a)(b) (providing that "'actual innocence' means that, had the results of the DNA testing . . . been presented at trial, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the person's case . . ., no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted, *or, if the person was sentenced to death, no reasonable factfinder would have found the petitioner guilty of the aggravating circumstance or circumstances the petitioner*

(emphasis added). Thus, the rule's text does not authorize relief based merely on a PCR court's finding that the sentencing judge *might* not have, or *probably* would not have, imposed the death sentence had the new evidence been available and considered by him. *Cf.* Ariz. R. Crim. P. 32.1(e) (authorizing post-conviction relief when "newly discovered material facts . . . *probably would have changed* the verdict or sentence" (emphasis added)).

¶30         This formulation is perplexing on several levels. Based strictly on the rule's text, its application is impractical and necessitates sheer speculation. As applied here, Rule 32.1(h) on its face compelled the PCR court, a judge who was not involved in the underlying trial or sentencing process, to speculate as to the decision that the trial court (a different, and now deceased, judge) would have made decades earlier, and to embrace that speculation on a clear-and-convincing standard.[5] Regardless of the persuasive force of the new evidence on which the PCR court's ruling was based, any determination that the sentencing court, based on that evidence, "would not have imposed the death penalty," Ariz. R. Crim. P. 32.1(h), is purely conjectural.

¶31         Though not disagreeing that Rule 32.1(h)'s wording lends itself to such an "unmanageable, if not impossible, standard," the Court concludes that "[t]he better reading is that Rule 32.1(h)'s reference to 'the court' means a reasonable sentencer, whether a judge or a jury." *Supra* ¶ 11. But even if that objective standard can reasonably be inferred from the rule's text, it does not alleviate all concerns—to some extent the relief granted by the PCR court here depended on its subjective view of the new evidence presented in the Rule 32 hearing, with no way of knowing whether the sentencing judge, had he been presented with the same evidence and arguments in 1993, would have viewed that evidence the same way and found *Tison*'s "reckless indifference" requirement lacking. Because the State did not present these issues, *see supra* ¶ 6, and does not specifically challenge the PCR court's ruling on this particular ground, however, I join the Court's resolution of the other issues raised.

---

*was found guilty of committing and that is or are the basis of that sentence of death*" (emphasis added)).

[5]   Miles was sentenced to death by the trial court, before the Arizona Legislature in 2002 prescribed jury sentencing in capital cases. *See* A.R.S. §§ 13-751, -752.

¶32        The current, restyled version of the rule (effective Jan. 1, 2018) allows relief when the petitioner demonstrates that "no reasonable fact-finder would find the defendant guilty beyond a reasonable doubt, or that the death penalty would not have been imposed."  Ariz. R. Crim. P. 32.1(h). This new version might be read to impose a more objective, workable standard of review that requires the PCR court to determine whether any reasonable fact-finder would have imposed the death penalty, rather than whether a specific individual would have done so in the past.  The new version implicitly acknowledges permissible variations in results among different fact-finders and confines the inquiry to the objective limits of those variations, while the old version, read literally, arguably required the PCR court to imagine subjectively the decision that a specific judge supposedly would have made had the new scientific evidence been available and presented to that judge at sentencing.[6]

¶33        However problematic the former standard, the State has not raised the issue and we must resolve any ambiguities in favor of lenity.  *See State v. Pena*, 140 Ariz. 545, 549–50 (App. 1983) ("[W]here the statute itself is susceptible to more than one interpretation, the rule of lenity dictates that any doubt should be resolved in favor of the defendant."), *approved and adopted by* 140 Ariz. 544 (1984); *cf.* A.R.S. § 13-104 (stating that penal statutes are not to be "strictly construed," but rather "construed according to the fair meaning of their terms to promote justice and effect the objects of the law").

¶34        One final concern relates to the apparent overlap between Rule 32.1(e) and Rule 32.1(h) and the prospect of capital defendants avoiding the requirements of the former by relying solely on the latter, as Miles and the PCR court did here.  As the Court observes, Miles sought relief under Rule 32.1(h) based on "newly discovered mitigation evidence." *Supra* ¶ 3.  That claim falls squarely within Rule 32.1(e), which specifically

---

[6]  Although the current version of Rule 32.1(h), as "restyled" and effective January 1, 2018, omits any reference to "the court" and perhaps is preferable to the 2000 version of the rule that applies here, any substantive differences between the two are not patently obvious.  Recently, our Chief Justice appointed a new "Task Force on Rule 32" to review the rule as a whole and "identify possible substantive changes that improve upon the objectives of Rule 32 and the post-conviction relief process."  Supreme Court of Arizona, Admin. Order No. 2018-07 (Jan. 24, 2018).  In my view, Rule 32.1(h) is a prime candidate for the Task Force's consideration.

allows post-conviction relief when a defendant shows "newly discovered material facts probably exist and those facts probably would have changed the verdict or sentence." *See also* A.R.S. § 13-4231(5) (same). Like claims under Rule 32.1(h), claims under Rule 32.1(e) are excepted from preclusion. Ariz. R. Crim. P. 32.2(b). Unlike Rule 32.1(h), however, Rule 32.1(e) requires a defendant to also show that he "exercised due diligence in discovering these facts," a showing Miles did not have to make. *See also* A.R.S. § 13-4231(5)(b). *See generally State v. Amaral*, 239 Ariz. 217 (2016); *State v. Bilke*, 162 Ariz. 51 (1989).

¶35        The comment to Rule 32.1(h) states that a claim under that rule "is independent of a claim under Rule 32.1(e)," and that "[a] defendant who establishes a claim of newly discovered evidence does not need to comply with the requirements of Rule 32.1(h)." Nonetheless, using Rule 32.1(h) as an end-run around Rule 32.1(e)'s due-diligence requirement when, as here, relief is sought decades later based solely on newly discovered mental-health evidence and expert opinions, seems at odds with interests of finality and victim rights. *See* Ariz. Const. art. 2, § 2.1(A)(10) ("To preserve and protect victims' rights to justice and due process, a victim of crime has a right" to a "prompt and final conclusion of the case after the conviction and sentence"); A.R.S. § 13-4401(19) (defining "victim" to include a murder victim's relatives "or any other lawful representative of the person"). For the foregoing reasons, but with the reservations noted, I concur in the Court's opinion and result.

JUDGE SWANN, joined by VICE CHIEF JUSTICE PELANDER and JUSTICE BOLICK, concurring:

¶36 I concur fully with the Court's legal holding that after-acquired evidence of diminished capacity is properly considered in the *Tison* inquiry if it would otherwise be admissible under the rules of evidence. And based on the issues the State chose to present, I also concur in the result.

¶37 I write separately because the record reveals that the evidence of cocaine withdrawal syndrome and ARND presented to the PCR court was, in my view, improperly admitted under Arizona Rule of Evidence 702. If the State had not affirmatively waived any challenge on that ground, I would not join in the result.

¶38 The expert opinions that resulted in the PCR court's findings of fact were based on the witnesses' experiences coupled with medical scholarship that is generally accepted in the scientific community. *See Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923). Until 2012, this would have been more than sufficient to render the opinions admissible in Arizona. Indeed, under *Logerquist v. McVey*, even general acceptance of the science would not have been required. 196 Ariz. 470, 480 ¶ 30, 485–86 ¶ 47, 490 ¶ 62 (2000). But in 2012, this Court discarded *Logerquist* and *Frye* in favor of the federal approach to expert testimony now embodied in our Rule 702.[7]

¶39 Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[7] The State did not object to the introduction of the evidence, and the trial court therefore was not required to reject it.

> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

**¶40**            I have no quarrel with the qualifications of the defense experts under subsection (a), nor do I doubt the merit of the science surrounding cocaine withdrawal syndrome and ARND under subsections (b) and (c). But the record reveals nothing to suggest a reliable application of scientific methods to connect cocaine withdrawal syndrome and ARND to the facts of this case.

**¶41**            *Logerquist* rejected the trial court's role as a "gatekeeper" with respect to behavioral-health evidence. 196 Ariz. at 490 ¶ 59. But Rule 702 now demands that the court fulfill a gatekeeping role, and this Court has affirmed that "the rule by its terms forecloses the approach of leaving challenges to an expert's application of a methodology exclusively to the jury. Such challenges are instead a proper subject of the trial court's gatekeeping inquiry." *State v. Bernstein*, 237 Ariz. 226, 229 ¶ 13 (2015). In *Bernstein*, we adopted a flexible approach to the inquiry and cautioned that the application of a methodology need not be flawless to be admissible. *Id.* at 229–30 ¶¶ 14–18.

**¶42**            Here, application of the brain science underlying cocaine withdrawal syndrome and ARND to the facts of this case was not merely imperfect — it was completely lacking. Expert conclusions concerning whether Miles, at the moment of the murder, "subjectively appreciated that [his] acts were likely to result in the taking of innocent life" amounted to speculation, not science. *State v. Lynch*, 225 Ariz. 27, 36 ¶ 43 (2010) (quoting *Tison*, 481 U.S. at 152). To be sure, the PCR court, not a jury, acted as the factfinder in this case. But the Rules of Evidence apply equally to such proceedings, and without evidence of a reliable methodology that could bear on the *Tison* inquiry, on the facts of this case the evidence should not have been admitted.

**¶43** The record amply supports findings that (1) cocaine withdrawal syndrome exists, (2) Miles has ARND and was addicted to cocaine, (3) Miles may have suffered from the absence of cocaine in his system at the time of the murder, and (4) a known neurochemical mechanism confirms that cocaine withdrawal *can* affect an individual's perceptions and understanding of his actions, particularly if he has ARND. Yet the *Tison* question is not whether chemical dependence interfered with Miles's dopamine system in a way that could have altered his perceptions and judgment; the question is whether Miles *actually* failed to appreciate that his acts were likely to result in the taking of innocent life at the relevant time. Nothing in the expert reports or testimony identified a methodology by which an understanding of the mechanism by which cocaine affects the brain can answer the *Tison* question on these facts.

**¶44** By calling attention to this concern, I do not suggest that the court should intrude upon the factfinder's role in weighing admissible evidence. My observations relate only to the bare admissibility of the evidence under Rule 702(d). That rule laudably demands that the forensic use of scientific evidence comport with scientific principles. A body of cutting-edge science that describes a phenomenon is alluring fodder in a legal proceeding. But even a thorough and reliable scientific understanding of a phenomenon does not always translate to admissibility under Rule 702(d), because an abstract science sometimes lacks a method that permits its application to the facts of a case in a manner that allows a scientifically valid conclusion about the issue that a court is required to decide. In this case, no method was identified that would allow an expert or a factfinder to answer the single question posed by *Tison* — instead, the scientific evidence only offered an informed basis for speculation about the issue before the court. This is exactly what Rule 702(d) is designed to prevent.[8]

---

[8] I recognize that Rule 702 permits the use of expert testimony to educate the factfinder about general scientific principles without application to the facts. *State v. Salazar-Mercado*, 234 Ariz. 590, 592–93 ¶¶ 6–11 (2014). But in this case, the expert testimony related directly to the facts of the case, the experts opined on the facts and the ultimate issue in the case, and Rule 702(d) therefore applies. When scientific evidence is used to justify factual findings, adherence to Rule 702(d) is critical, because the aura of science without valid application poses an extreme risk of prejudice.

**¶45**　　　　To reach the conclusion that Miles is entitled to relief under *Tison*, as the PCR court did, one must either accept the proposition that every person who has ARND, is addicted to cocaine, and experiences a withdrawal is unable to appreciate the consequences of his actions; or rely on a witness's "experience" as a means of translating the abstract science into a conclusion about the defendant's state of mind.　The former view is not supported by the evidence in this case — no expert testified that cocaine withdrawal syndrome affects all individuals, or even all individuals with ARND, in a uniformly debilitating way.　(Of course, if such a proposition were accepted, then cocaine withdrawal would automatically preclude the death penalty in every case in which a defendant with ARND acts while withdrawing from the drug.)　And the latter view does not satisfy the requirements of Rule 702(d).　While experience is sufficient to qualify the *expert*, it is not sufficient to qualify the *opinion* without a reliable methodology.

**¶46**　　　　Because the State waived its challenge to the admissibility of the evidence, this Court is constrained to accept the PCR court's finding that under *Tison* the court would not have imposed the death penalty.

**¶47**　　　　For the foregoing reasons, I concur in the opinion and the result.