IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ARSENIO CASTANEDA, JR., *Appellant.*

No. 1 CA-CR 21-0525
FILED 9-13-2022

Appeal from the Superior Court in Yavapai County
No. P1300CR202001489
The Honorable Debra R. Phelan, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian R. Coffman
*Counsel for Appellee*

Law Office of Nicole Countryman, Phoenix
By Nicole Countryman
*Counsel for Appellant*

**OPINION**

Vice Chief Judge David B. Gass delivered the opinion of the court, in which Presiding Judge Samuel A. Thumma and Judge Cynthia J. Bailey joined.

**G A S S**, Vice Chief Judge:

¶1         Defendant Arsenio Castaneda appeals his convictions and sentences for abuse of a child under fifteen years of age and various drug offenses. Because the superior court did not abuse its discretion in finding a five-year-old witness competent to testify, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2         This court reviews the facts in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against Castaneda. *See State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).

¶3         In November 2020, state troopers stopped a reportedly stolen car traveling on a Yavapai County highway. Troopers removed and detained the two adult passengers and the driver, Castaneda. Castaneda's four-year-old son remained asleep in the car.

¶4         After noticing burn-marked aluminum foil on the driver's side floorboard, troopers removed the child from the car and allowed him to stand near Castaneda. Troopers searched the car and found a backpack containing 150 fentanyl pills and a gun in the trunk. They also found a glass pipe in the glove compartment. Though Castaneda admitted using the aluminum foil to smoke fentanyl and the glass pipe to smoke methamphetamine, he denied knowledge of the pills.

¶5         Troopers took Castaneda and his son to a substation. After Castaneda asked multiple times to take the child to the restroom, troopers witnessed the child take a fentanyl pill out of his pocket. When troopers asked about the pill, the child responded, "They are my daddy's." The child pulled another pill from his pocket after troopers asked whether he had more pills. One of the troopers removed seven more pills from the child's pocket. Laboratory testing showed those nine pills and the others from the backpack contained fentanyl. When troopers confronted Castaneda about the nine pills, he cried and apologized.

¶6         As relevant here, the State charged Castaneda with one count of child abuse of a child under fifteen years of age, one count of sale or transportation of narcotic drugs (fentanyl), one count of possession or use of narcotic drugs (fentanyl), one count of misconduct involving weapons, and two counts of possession of drug paraphernalia.

¶7         At trial, the State called Castaneda's son as a witness. On direct examination, the son correctly stated his first and last name and his

age. The State asked whether he knew the difference between the truth and a lie. The child responded, "Lie." The State then asked, "If I told you that I am wearing bright red pants today, would that be a truth or a lie?" Though the child incorrectly responded, "True," he correctly answered "Black" when the State's counsel asked, "What color are my pants?" The son also correctly answered "Red" when the State's asked, "What color is your shirt?" But the son incorrectly answered the question, "So if I said it was blue, is that right?"

¶8        The State then asked the child if he remembered taking something out of his pocket during the incident and giving it to the troopers. The child replied, "No." The State asked, "Do you remember telling me and your mom that you had some pills in your pocket that daddy put there?" The child replied, "Yeah." The child then stood up and, placing his hands behind his back, twice demonstrated to the jury how his father put the pills into his pocket. The child replied, "yeah" when the State asked if he remembered his father putting the pills into his pocket.

¶9        On cross examination, defense counsel asked the child what was happening while he stood next to his father during the stop. The child said his father "put it in my pocket." Defense counsel then asked if the "man in the back seat put pills in your pocket" and if the man told him, "they were your daddy's pills." The child replied, "Yeah."

¶10        On redirect, the State asked the child who put the pills in his pocket during the incident. The child replied, "[m]y dad." The child again replied "Daddy" when asked whether the man in the back seat or his father placed the pills in his pocket.

¶11        Castaneda twice timely challenged his son's competency as a witness. On the first day of trial, Defense counsel objected to the child's competency based on his young age. Later, during the child's direct examination, defense counsel again raised the competency issue, arguing the child's responses regarding the day of the incident were "going all over the place." The superior court overruled Castaneda's objection.

¶12        A jury found Castaneda guilty on five of the six counts, finding him not guilty of the misconduct involving weapons. The superior court sentenced Castaneda to 13 years in prison for child abuse. On the remaining counts, the superior court imposed a term of probation to start after the prison sentence. Castaneda timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 13-4031 and 13-4033.A.1.

**ANALYSIS**

¶13        Castaneda contends the superior court erred in permitting the then-five-year-old child to testify at trial. Castaneda argues the child was incompetent to testify because his "responses were confusing, and demonstrated that he was unable to competently communicate about the incident or understand what it meant to tell the truth."

¶14        On appeal, this court defers to the superior court's determination regarding a witness's competency to testify. *Zimmer v. Peters*, 176 Ariz. 426, 429 (App. 1993) (citing *State v. Apodaca*, 166 Ariz. 274, 276 (App. 1990)); *see also State v. Melendez*, 135 Ariz. 390, 394 (App. 1982). This court will reverse the superior court's competency decision only if the decision constitutes a clear abuse of discretion. *See State v. Garner*, 116 Ariz. 443, 446 (1977), *superseded by rule on other grounds as stated in State v. Ferrero*, 229 Ariz. 239, 241–42, ¶¶ 8–13 (2012). A superior court abuses its discretion if its ruling "is manifestly unreasonable, exercised on untenable grounds or for untenable reasons." *State v. Woody*, 173 Ariz. 561, 563 (App. 1992) (quoting *Williams v. Williams*, 166 Ariz. 260, 265 (App. 1990)). Additionally, if a defendant preserves an issue for appeal by objecting at trial, this court applies the harmless-error standard. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005) (citations omitted).

¶15        "In any criminal trial every person is competent to be a witness." A.R.S. § 13-4061; *see also* Ariz. R. Evid. 601 ("[e]very person is competent to be a witness unless these rules or an applicable statute provides otherwise"); A.R.S. § 12-2201.A ("[e]very person . . . may testify in any civil or criminal proceeding . . . except as otherwise expressly provided by law"); *cf.* A.R.S. § 12-2202(2) ("The following shall not be witnesses in a *civil action*: . . . Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are to testify, or of relating them truly." (emphasis added)).

¶16        "Neither age, mental capacity nor feeble-mindedness renders a witness incompetent or disqualified." *State v. Super. Ct. (Pima Cnty.)*, 149 Ariz. 397, 399 (App. 1986) (discussing A.R.S. § 13-4061). Instead, competency depends on a witness's ability to observe, recollect, and communicate about the event in question. *See State v. Brown*, 102 Ariz. 87, 89 (1967) (citing *People v. McCaughan*, 317 P.2d 974, 981 (Cal. 1957)). "In instances of extreme youth, to find a lack of competency, the [superior court] must be convinced that no trier of fact could reasonably believe that the prospective witness could have observed, communicated, remembered

or told the truth with respect to the event in question." *Pima Cnty.*, 149 Ariz. at 401.

**¶17**      Castaneda argues the child's responses "demonstrated that he was unable to competently communicate about the incident or understand what it meant to tell the truth." But on direct examination, the child stood up, placed his hands behind his back, and twice reenacted how his father put the pills in his pocket. Also, on cross examination, the child said his father "put it in my pocket" while the child stood next to him the day of the incident. And again, on redirect, the child twice stated his father placed the pills in his pocket during the incident. The child, therefore, adequately observed, recollected, and communicated about the event in question when he physically demonstrated and recounted in detail how his father placed the pills in his pocket. *See Brown*, 102 Ariz. at 89.

**¶18**      Castaneda also contends the child's "responses were confusing" and "demonstrated he did not know the difference between the truth and a lie." True, the child did not seem to grasp abstract concepts like truth and lies when he said, "Lie" after the State asked whether he knew the difference between the two concepts. He also answered, "True" when the prosecutor asked whether he was wearing bright red pants, though the prosecutor was wearing black pants.

**¶19**      But whether a child "is incapable of formulating an abstract definition of truth aids [the court] very little in determining whether that child has an intuitive grasp of the difference between truth and falsehood." *State v. Pittman*, 118 Ariz. 71, 76 (1978). "A preschool-aged child generally does not understand abstract concepts such as . . . truth or [a] lie." *Pima Cnty.*, 149 Ariz. at 400. That lack of understanding, however, goes to the credibility of the witness and the weight of the testimony—not competency. *Id.* (citing *Pinal Cnty. Juv. Action Nos. J-1123 and J-1124*, 147 Ariz. 302, 306 (App. 1985)).

**¶20**      Younger children typically are more comfortable with concrete lines of questioning. *See* Angela D. Evans & Thomas D. Lyon, *Assessing Children's Competency to Take the Oath in Court: The Influence of Question Type on Children's Accuracy*, 37 Law & Hum. Behavior 195, 195–96 (2012). Though the son struggled with concepts such as "truth" and "lying," son did not struggle with concrete factual issues. Indeed, when asked more concrete questions, the son correctly answered questions regarding colors, and numbers. And he accurately stated his first and last name, and his age.

**¶21**     This court has reversed a superior court's finding of incompetency in a similar case involving an even younger witness. In *Pima Cnty.*, this court recognized at times, "[a] child's testimony may be rambling and disjointed, characterized by lack of continuity, spotty memory and an inability to discuss specific dates and times." 149 Ariz. at 400. Even so, this court held the three-year-old witness was competent to testify in a criminal trial because, though she did not grasp abstract concepts like truth and lies, she accurately answered preliminary questions regarding her name, age, and the colors of items in the courtroom. *Id.* at 399–401. Here, the child answered the same concrete questions asked in *Pima Cnty.*, and he was two years older. Moreover, his testimony demonstrated he observed and could communicate about the event. *See id.* at 401.

**¶22**     Because substantial evidence supports the superior court's finding the child was competent to testify, the superior court did not abuse its discretion in permitting the child to testify, and we need not address harmless error.

## CONCLUSION

**¶23**     We affirm Castaneda's convictions, sentence, and probation grants.



AMY M. WOOD • Clerk of the Court
FILED:     AA

6